893 A.2d 70

**M. Diane KOKEN, Insurance Commissioner of the Commonwealth of Pennsylvania,**

v.

**RELIANCE INSURANCE COMPANY, Vitas Healthcare Corporation, Vitas Holding Corp., Vitas Healthcare of Texas, L.P., Magellan Reinsurance Company, Ltd., RBH Reinsurance Ltd., Cleanese Americas Corp., Elmwood Insurance Ltd., Clewood Insurance Company, Citicorp Insurance USA, Citicorp, Clients Assurance Pool, Ltd., and CSX Insurance Co., Intervenors**

Appeal of Mawson & Mawson, Inc.

Supreme Court of Pennsylvania.

Argued Nov. 30, 2004.

Decided March 20, 2006.

Stephen C. Baker, John B. Dempsey, Philadelphia, for Mawson & Mawson, Inc., appellant.

Hillary C, Steinberg, Jeffrey B. Rotwitt, James Michael Matour, Philadelphia, for Reliance Ins. Co., appellee.

Joshua Philip Broudy, James B. Dilsheimer, Daniel H. Wheeler, Ann Eun Kim, Eric Jonathan, Rothschild, Anthony Vidovich, Richard P. McElroy, Ann B. Laupheimer, G. Craig Lord, Kit Applegate, Jerome R. Richter, Alan Gershenson, Roger F. Cox. Deborah Fuchs Cohen, Christopher A. Lewis, Philadelphia, Lynne E. Fitzwater, Harrisburg, for Ins. Com'r of PA, appellee.

Lisa Luborsky, Philadelphia, for Pa. Property & Cas. Ins. Guar. Ass'n., intervenor.

Robert A. Kauffman, Harleysville, Elizabeth C.F. Abrams, Philadelphia, Michael L. Browne, for Vitas Healthcare Corp., intervenor.

Paul Kevin Brobson, for Magellan Reinsurance Co. Ltd., RBH Reinsurance, Ltd., intervenors.

Joseph James Bellew, Jay M. Levin, Paoli, for Clients Assur. Pool, Ltd., intervenor.

Carl Robert Shultz, for CXS Ins. Co., intervenor.

Francis P. Newell, Philadelphia, for Celanese Americas Corp., Cellwood Ins. Co., Elwood Ins. Ltd., intervenors.

Diane Marie Takarsky, James William Kutz, Kimberly Marie Colonna, Harrisburg, for Earth Tech, Inc, intervenor.

Mark Jason Dorval, David Carl Franceski, for Citicorp North America, Inc., amicus curiae.

BEFORE: CAPPY, C.J., CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and BAER, JJ.

## OPINION

Justice CASTILLE.

This is a direct appeal from a single-judge Commonwealth Court order that denied the petition of appellant Mawson & Mawson, Inc. ("Mawson") to enforce a third party proof of claim ("POC") and its attendant release, and allowed third party claimant Richard Ruhl to withdraw the POC. The question before this Court is whether and when such a third party POC, filed in response to an insurance company's liquidation, may be withdrawn. For the following reasons, we find that the Commonwealth Court erred, and accordingly, we reverse and remand for proceedings consistent with this Opinion.

On June 30, 1997, a truck owned by Mawson collided with an automobile driven by Ruhl on Interstate 81 in Lackawanna County, Pennsylvania.[1] At the time of the accident, Mawson had $1,000,000 in primary insurance coverage through Reli-

[1] Attempting to summarize the factual and procedural history of the case *sub judice* has proved challenging, as the record appears to be incomplete, and the controlling legal ruling below was issued in the absence of a focused resolution of certain factual issues.

ance Insurance Company ("Reliance") and $10,000,000 in excess insurance coverage through Federated Insurance Company ("Federated"). On August 24, 1998, Ruhl filed a personal injury action against Mawson in the Court of Common Pleas of Lackawanna County. Upon receipt of Ruhl's complaint, Mawson notified Reliance and Reliance provided counsel to defend the action. During the course of discovery, Mawson revealed that its primary automobile insurance carrier was Reliance, but did not disclose its excess insurance coverage through Federated.

On May 29, 2001, the Commonwealth Court entered an order appointing the Insurance Commissioner for the Commonwealth of Pennsylvania to serve as Rehabilitator of Reliance pursuant to Article V, Section 221.15 of the Pennsylvania Insurance Department Act (the "Act"), 40 P.S. §§ 221.1–221.63.[2] The order placed all of Reliance's assets under the control of the Insurance Commissioner and the Commonwealth Court. On October 3, 2001, the Commonwealth Court declared Reliance insolvent,[3] terminated rehabilitation, and

**2.** Section 221.15 provides, in pertinent part, as follows:

An order to rehabilitate the business of a domestic insurer, or an alien insurer domiciled in this Commonwealth, shall appoint the commissioner and his successors in office the rehabilitator, and shall direct the rehabilitator forthwith to take possession of the assets of the insurer including any deposits held by the commissioner, and to administer them under the orders of the court. The filing or recording of the order with the clerk of the Commonwealth Court or recorder of deeds of the county in which the principal business of the company is conducted, or the county in which its principal office or place of business is located, shall impart the same notice as a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds would have imparted.

40 P.S. § 221.15(c).

**3.** The declaration of insolvency was pursuant to Section 221.20 of the Act which provides, in pertinent part:

At the time of petitioning for an order of liquidation, or at any time thereafter, the commissioner, after making appropriate findings of an insurer's insolvency, following an administrative hearing, may petition the court for a judicial declaration of such insolvency. After providing such notice and hearing as are permitted for appeals from administrative agencies, the court may make the declaration.

40 P.S. § 221.20(f).

placed it into liquidation,[4] with the Insurance Commissioner appointed as Statutory Liquidator (hereinafter, "Liquidator").[5] On January 15, 2002, the Liquidator notified all interested parties via United States mail of Reliance's liquidation. The notice packet included instructions which advised all potential claimants against Reliance, including third party claimants like Ruhl, of their right to pursue their claims in the liquidation proceedings. Potential claimants were advised that, to pursue their causes in liquidation, they were required to file the enclosed POC form. The notice further provided:

> You are a third party claimant if you have a claim against a Reliance insured, which may be covered by the insured's

4. Section 221.18 of the Act addresses liquidation, as follows:
 Whenever he has reasonable cause to believe that further attempts to rehabilitate an insurer would substantially increase the risk of loss to creditors, policy and certificate holders, or the public, or would be futile, the rehabilitator may petition the Commonwealth Court for an order of liquidation. A petition under this subsection shall have the same effect as a petition under section 520.[ ] The Commonwealth Court shall permit the directors to take such actions as are reasonably necessary to defend against the petition and may order payment from the estate of the insurer of such costs and other expenses of defense as justice may require.
 40 P.S. § 221.18(a) (footnote omitted).

5. Section 221.20 of the Act addresses appointment of the Commissioner as liquidator, and the effect of such appointment, as follows:
 An order to liquidate the business of a domestic insurer shall appoint the commissioner and his successors in office liquidator and shall direct the liquidator forthwith to take possession of the assets of the insurer and to administer them under the orders of the court. The liquidator shall be vested by operation of law with the title to all of the property, contracts and rights of action and all of the books and records of the insurer ordered liquidated, wherever located, as of the date of the filing of the petition for liquidation. He may recover and reduce the same to possession except that ancillary receivers in reciprocal states shall have, as to assets located in their respective states, the rights and powers which are prescribed in section 556(c) [ ] for ancillary receivers appointed in this Commonwealth as to assets located in this Commonwealth. The filing or recording of the order with the Clerk of the Commonwealth Court or with the recorder of deeds of the county in which the principal business of the company is conducted, or the county in which its principal office or place of business is located, shall impart the same notice as a deed, bill of sale or other evidence of title duly filed or recorded with that recorder of deeds would have imparted.
 40 P.S. § 221.20(c) (footnote omitted).

insurance policy. You may either file a claim with the Statutory Liquidator or pursue legal action against the insured to recover your claim. If you file a claim with the Liquidator, filing of the claim shall operate as a release of the insured's liability to you on that cause of action in the amount of applicable policy limits. If coverage of the claim is avoided by the Liquidator, this release will become null and void.

On January 25, 2002, Ruhl promptly filed a POC, which the Liquidator accepted on January 29, 2002. Ruhl's POC contained the following release of Mawson up to Reliance's policy limits:

If the foregoing Proof of Claim alleges a claim against a Reliance Insured (third party claim), the undersigned hereby *releases any and all claims* which have been or could be made against such Reliance Insured based on or arising out of the facts supporting the above Proof of Claim up to the amount of the applicable policy limit and subject to coverage being accepted by the Liquidator, regardless of whether any compensation is actually paid to the undersigned.

The notice and release are consistent with the provisions of Section 221.40(a) of the Act, which addresses third party claims in liquidation, and the effect of such claims, as follows:

Whenever any third party asserts a cause of action against an insured of an insurer in liquidation the third party may file a claim with the liquidator. The filing of the claim shall operate as a release of the insured's liability to the third party on that cause of action in the amount of the applicable policy limit, but the liquidator shall also insert in any form used for the filing of third party claims appropriate language to constitute such a release. The release shall be null and void if the insurance coverage is avoided by the liquidator.

40 P.S. § 221.40(a).

Notwithstanding Ruhl's filing of the POC, neither Ruhl nor Mawson sought to stay the pending Common Pleas Court litigation in the tort action and discovery continued in that

case. Meanwhile, the Liquidator notified the Pennsylvania Property and Casualty Insurance Guaranty Association ("PPCIGA") that a POC was filed, and Ruhl's claim was transferred to PPCIGA.[6] In January 2002, Ruhl received notice of PPCIGA's involvement. On November 14, 2002, PPCIGA notified Mawson that it had received the claim and advised it to retain independent counsel to protect its exposure in the underlying tort action because a jury award would likely exceed PPCIGA's $300,000 statutory limit.

On November 27, 2002, one business day before trial in the tort action, PPCIGA tendered its $300,000 limit, less statutory offsets, to Ruhl[7] and advised Mawson that PPCIGA would no longer defend Mawson.[8] Mawson retained current counsel,

6. Under the Pennsylvania Property and Casualty Insurance Guaranty Association Act (the "PPCIGA Act"), 40 P.S. §§ 991.1801–991.1820, one purpose of PPCIGA is to "provide a means for the payment of covered claims under certain property and casualty insurance policies, to avoid excessive delay in the payment of such claims and to avoid financial loss to claimants or policyholders as a result of the insolvency of an insurer." 40 P.S. § 991.1801(1). PPCIGA is:

> obligated to pay covered claims existing prior the determination of the insolvency, arising within thirty (30) days after the determination of insolvency or before the policy expiration date if less than thirty (30) days after the determination of insolvency or before the insured replaces the policy or causes its cancellation if he does so within thirty (30) days of the determination.

*Id.* § 991.1803(b)(1)(i). Under the PPCIGA Act, every insurer in the Commonwealth is required to participate in PPCIGA and to contribute funds to satisfy claims obligations of insolvent insurers. *Id.* § 991.1803(a), (b)(3). For further explication of the role of PPCIGA, see *Bell v. Slezak*, 571 Pa. 333, 812 A.2d 566 (2002).

7. As a result of the offsets, it appears that Ruhl actually received $80,000. *See Koken v. Reliance Ins. Co. (In re Mawson and Mawson v. Richard Ruhl)*, 841 A.2d 588, 590 n. 3 (Pa.Cmwlth.2003). Neither party, nor the court below, identify the specific offsets that reduced Ruhl's payment from PPCIGA.

8. The PPCIGA Act provides that:

> [a]ny obligation of the association to defend an insured shall cease upon the association's payment or tender of an amount equal to the lesser of the association's covered claim obligation or the applicable policy limit. Such obligation shall be satisfied by paying to the claimant an amount as follows:
>
> * * *
>
> (B) An amount not exceeding three hundred thousand ($300,000) dollars per claimant for all other covered claims.

who obtained a continuance of the trial until January 22, 2003, so that Mawson could evaluate the case and obtain trial counsel.

In the interim, on December 6, 2002, Reliance informed Mawson that (1) Ruhl had filed a POC in January 2002, and (2) under the POC's release provision, it had no direct liability to Ruhl. Mawson then obtained a copy of Ruhl's POC. Mawson contacted Ruhl on December 9, 2002 requesting a written agreement that Ruhl would not attempt to enforce any judgment against Mawson unless and until Mawson's primary and excess insurance coverage had been exhausted. Ruhl requested a copy of the POC he had executed, which Mawson faxed to him the same day. In a letter dated December 10, 2002, Ruhl then advised Mawson that he had contacted Reliance on December 9, 2002, and withdrawn his POC prior to coverage being "accepted by the Liquidator," and further informed Mawson of a deposition to be taken in the tort action. On December 13, 2002, the Liquidator informed Ruhl that the POC was designated as "inactive," and was again advised of the third party claims release provision set forth in Section 221.40(a).

On January 9, 2003,[9] Mawson initiated the instant action by filing a petition to enforce Ruhl's POC with the Commonwealth Court, noting that it was covered under both a Reliance insurance policy and a Federated excess insurance policy.[10] Mawson argued that, under the clear language of Section 221.40(a) of the Act, Ruhl's filing of the POC abrogated Mawson's exposure up to its Reliance policy limits. Mawson also amended its answer in the tort action to add the affirmative defense of release. In response to Mawson's

40 P.S. § 991.1803(b)(1)(i).

9. The Commonwealth Court identified the date of the filing of Mawson's petition to enforce the POC as February 19, 2002. The original record reveals that the actual date of filing was January 9, 2003. The discrepancy is immaterial to the issue presented.

10. Pursuant to 40 P.S. § 221.4(d), the Commonwealth Court has exclusive original jurisdiction over insurance company insolvencies where the insurance company is a domestic company licensed in the Commonwealth of Pennsylvania.

petition to the Commonwealth Court, Ruhl filed preliminary objections on January 16, 2003, asserting that he had withdrawn his POC on December 9, 2002, before it was accepted by the Liquidator.

Thereafter, Federated agreed to assume Mawson's defense in the tort action under its excess policy. On January 24, 2003, following a jury trial, the jury returned a verdict and award of damages in favor of Ruhl in the amount of $367,770. Ruhl then filed a motion for delay damages in the amount of $105,343.43.

On February 14, 2003, the Commonwealth Court dismissed both Mawson's petition to enforce the POC as well as Ruhl's preliminary objections. Inexplicably, following this dismissal, Mawson filed an affidavit in connection with his petition to enforce on February 19, 2003, and Ruhl filed an answer to the petition to enforce on February 20, 2003.[11] In his answer, Ruhl alleged for the first time that Mawson had failed to disclose its $10,000,000 excess insurance policy with Federated, and he argued that the POC's release language was conditional: *i.e.*, it was ineffective unless and until the Liquidator actually accepted coverage, which did not occur before his withdrawal.

Soon thereafter, Mawson apparently realized the existence of the Commonwealth Court's February 14th dismissal order, and thus on February 24, 2003 it filed a petition for reconsideration. Ruhl filed an answer on March 6, 2003. In his answer, Ruhl averred that he had filed a motion for sanctions with the trial court in the tort action, seeking to preclude enforcement of the POC release due to Mawson's allegedly filing false interrogatory answers regarding its Federated excess insurance coverage.[12] The Commonwealth Court

11. Presumably, the parties were unaware of the Commonwealth Court's February 14th dismissal order when they filed these pleadings.

12. The motion for sanctions alleged that, in response to a request for the disclosure of Mawson's automobile insurance carrier information, Mawson acknowledged its primary coverage with Reliance but did not disclose the excess policy with Federated. The motion further alleged that Ruhl was acting under the belief that Mawson did not have excess insurance coverage when he filed the POC in January 2002. Ruhl then

granted reconsideration on April 17, 2003, thereby vacating its dismissal of the petition to enforce. The court also directed the parties, as well as the Liquidator, to brief the question of whether and when a third-party claimant may withdraw a filed POC and its attendant release. The matter was briefed and Mawson simultaneously sought judgment on the pleadings.

On October 28, 2003, the parties presented argument before Commonwealth Court President Judge James Gardner Colins, sitting as a single judge, hearing the matter in that court's original jurisdiction. Mawson argued that Ruhl's filing of the POC resulted in a statutory release of Mawson up to the $1,000,000 limit of its Reliance insurance policy. Mawson asserted that contract law principles of offer and acceptance did not apply in liquidation because the POC process is a statutory mechanism. Mawson also maintained that, in establishing Pennsylvania's statutory scheme, the General Assembly adopted a form of burden shifting among the interested parties in an insolvency, where standing is conferred upon third party claimants to assert claims directly against the insolvent insurer's estate, while the insolvent insurer's insureds, in turn, receive some benefit of the insurance coverage they had purchased. Furthermore, Mawson denied Ruhl's allegations that there were discovery violations in the tort action which had caused Ruhl to file its POC. Mawson also requested a scheduling order to allow depositions if President Judge Colins was concerned that there was insufficient factual information to decide the matter. N.T. 10/28/03, at 3–14, 26.[13]

In response, Ruhl argued that contract law principles applied and that, because the Liquidator never communicated an "acceptance" of his POC "offer," Ruhl could withdraw it. In

alleged that he would not have filed the POC if he had known of the undisclosed excess coverage. Neither party has informed this Court of the outcome of the sanctions motion below, and the record does not disclose the outcome.

13. While discussing the alleged discovery violations during oral argument, President Judge Colins expressed his consternation over the trial court in the tort action proceeding to trial and verdict when President Judge Colins "never gave it specific relief to pursue a jury trial." N.T. 10/28/03, at 27. This collateral point is not implicated in the present appeal.

Ruhl's view, when he withdrew his POC, his "offer" was revoked and the Liquidator's power to accept it was terminated. Ruhl further maintained that the Liquidator actually treated his POC as withdrawn as evidenced by the Liquidator's December 13, 2002 letter informing Ruhl that the POC was designated "inactive." Additionally, Ruhl maintained that Mawson's non-disclosure of its excess insurance coverage affected his decision to file the POC, and that once Ruhl became aware that Mawson was going to rely on the POC and its attendant release, he withdrew it. *Id.* at 19–21, 47–48.[14]

Although the Liquidator is not participating in the appeal before this Court, the Liquidator participated in the briefing and oral argument before President Judge Colins, and its position on the proper understanding of the Act is helpful to this Court's consideration. The Liquidator explained that Article V of the Pennsylvania Act is based upon the National Association of Insurance Commissioners ("NAIC") model act entitled "Insurer's Supervision Rehabilitation and Liquidation Model Act," ("Model Act"), which derives from Wisconsin's Insurer's Rehabilitation and Liquidation Act of 1967 ("Wisconsin Act"). *See* WIS. STAT. § 645.01 *et seq.* In the Liquidator's view, the filing of a POC is a statutory event which releases the policy holder up to the applicable insurance policy limits. The Liquidator rejected the notion that contract law was applicable because the statutory language, outlining the automatic effect of the POC, is clear. Citing the Comments to the Wisconsin Act as support, the Liquidator argued that important public policy is furthered via a proper application of the statute because, under Section 221.40(a), the General Assembly sought to allocate the unavoidable losses and burdens occasioned by the disruptive event of the insolvency of an insurance company. In this endeavor, the General Assembly made a decision to provide certain protections for policy

14. Ruhl also argued below that his POC as executed was technically invalid and incomplete because it lacked his Social Security number, a requirement for consideration listed on the face of the POC form. Notably, the Liquidator accepted and processed Ruhl's POC despite the absence of his Social Security number. The consequence of this lapse is not at issue on this appeal.

holders, including some economic benefit for the premiums they had paid. The Liquidator also noted that the decision in this case would affect not only the parties here, but other insolvent estates, some of which rely more heavily upon POC releases. *Id.* at 35–41, 51.

The Liquidator explained that, during an insurance company insolvency, a third party claimant makes a voluntary decision respecting whom to seek recovery from. In the Liquidator's view, if the third party claimant elects to file a knowing and voluntary POC and thus to seek recovery from the insolvent insurer's estate, that filing is an irrevocable elective event which forecloses that party from pursuing other remedies, and particularly bars him from pursuing policy holders.[15] The Liquidator noted that Ruhl had the opportunity to pursue a tort action against Mawson without filing a POC, and thus to see what he could recover directly from Mawson. The Liquidator asserted that Ruhl's POC release was not conditional and that no other action except its very filing was required in order to effectuate the statutory release. In the Liquidator's view, Ruhl was attempting to "hedge his bets" because it turned out that Mawson may be solvent enough to satisfy the remainder of the judgment. The Liquidator maintained that this was the very sort of situation the statute sought to prevent. The Liquidator also advised the court that it never treats POCs as withdrawn, and that filed POCs are administratively transferred to an inactive status where they remain until reactivated by the filer or until the ultimate resolution of the liquidation of the estate. *Id.* at 39–44, 50.

On December 16, 2004, President Judge Colins issued a published opinion and order which denied Mawson's request for judgment on the pleadings, as well as its petition to

---

**15.** In explicating the statute, both the Liquidator and Mawson also argued for application of two Florida intermediate appellate cases which concerned attempted withdrawal of a POC. *See Ramos v. Jackson,* 510 So.2d 1241, 1241–42 (Fla.Dist.Ct.App.1987) (*per curiam*); *In re International Forum of Florida Health Benefit Trust,* 607 So.2d 432, 441 (Fla.Dist.Ct.App.1992). The limited relevance of these cases will be discussed *infra.*

enforce, and directed the Liquidator to permit Ruhl to withdraw his POC and release. *Koken v. Reliance Ins. Co. (In re Mawson and Mawson v. Richard Ruhl)*, 841 A.2d 588 (Pa. Cmwlth.2003). The court first rejected the argument that the plain language of the statute precludes a party from withdrawing a filed POC and its attendant release. The court deemed that reading to lead to a "harsh result" that "does not reflect the statute," adding that such a "draconian" interpretation is particularly unpersuasive "in the context of an insurance liquidation where the harshest results fall not upon the executives and owners of the insolvent insurance company, but rather, fall equally upon the insured and the injured." 841 A.2d at 591. The court also rejected Ruhl's argument invoking general principles of contract law, noting that "the core elements of a contract are absent." *Id.*

Having determined that neither the statute nor case law plainly governed the withdrawal question, the court looked to the Rules of Civil Procedure for guidance. The court opined that a POC was more like a petition than a complaint, since a petition is "a written application made to a court, or addressed to some governmental authority *ex parte*, praying for the exercise of some action laid before it, or seeking the grant of a privilege, or license" while, in contrast, a complaint is the formal pleading that "initiates an action and sets forth a claim for relief." *Id.* at 592. The court then characterized a POC as but a form document prepared by the Liquidator to "capture critical information needed to process a claim in the liquidation proceeding." *Id.* In the court's view, a party who files a POC is fundamentally a creditor seeking payment of monies; the POC does not give the filer a right to judicial relief or even a right to institute judicial proceedings. *Id.*

The court then noted that, in petition practice, discontinuances are permitted in the discretion of the court, where discontinuance will not create an unjust disadvantage for the party opposing the discontinuance. A discontinuance is generally appropriate on cause shown. In insurance liquidation, the court then noted, unjust disadvantage arises where a discontinuance would "operate as a mechanism that permits unjust

settlement of a claim." *Id.* Therefore, the court concluded that a POC, like a petition, may be withdrawn upon cause shown. *Id.*

Applying the petition construct it derived from the procedural rules, the lower court reasoned that Ruhl filed his POC at a point where he had no knowledge of Mawson's excess insurance coverage. The court found that Ruhl learned of Mawson's excess insurance coverage though Federated at the same approximate time that Mawson invoked the third party claims/release provision of the POC, and Ruhl then immediately attempted to withdraw the POC. Based on this timeline, the court concluded that Ruhl should be permitted to withdraw the POC because Ruhl otherwise would be denied "the opportunity to seek recovery from the excess insurance carrier for the injuries he sustained." *Id.* at 593. Such a denial, the court reasoned, would work a disadvantage to Ruhl but would not disadvantage Mawson since "its interests are otherwise insured." *Id.* In short, the lower court employed an equitable approach which ultimately held that, once filed, a POC, like any "petition," may be withdrawn and that withdrawal was appropriate here under the "unjust disadvantage" standard. *Id.* at 592–93.[16]

Mawson then filed this direct appeal pursuant to 42 Pa.C.S. § 723(a). This Court's jurisdiction is secure.[17]

16. Mawson challenges certain factual findings which undergirded the lower court's analysis, such as the timing and reasons for Ruhl's litigation decisions. Mawson argues that these factual disputes should have been resolved following depositions and argument, etc. For purposes of deciding the issue on appeal, we will assume without deciding the accuracy of the factual predicates relied upon by the trial court; our answer to the legal question posed makes it unnecessary to resolve these tangential factual disputes.

17. Section 723(a) of the Judicial Code provides that: "The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the Commonwealth Court entered in any matter which was originally commenced in the Commonwealth Court except an order entered in a matter which constitutes an appeal to the Commonwealth Court from another court, a magisterial district judge or another government unit." 42 Pa.C.S. § 723(a). By order dated February 5, 2004, this Court's consideration of jurisdiction was postponed to the merits stage pursuant to Pa.R.A.P. 909(c). In the Statement of Jurisdiction in its Brief, Mawson notes only that the order below was issued in a matter resting

Before this Court, Mawson presents substantially the same arguments that it forwarded below. Mawson argues that the plain language of Section 221.40(a) requires a finding that the act of filing a third party POC in an insurance company liquidation operates as a release of the insured's liability in the amount of the applicable policy limits of the insolvent insurer. Mawson further contends that once the POC is filed, the statute permits no express or implicit opportunity for withdrawal, and thus the POC cannot be construed as an "offer" to the Liquidator that can be unilaterally withdrawn prior to acceptance.

With respect to the Commonwealth Court's contrary reasoning below, Mawson contends that the term "shall" as used in Section 221.40(a) is mandatory and the court was duty-bound to construe the statute according to its plain meaning. *See Commonwealth of Pennsylvania, Dept. of Transp. v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1165 n. 13 (2000). Furthermore, Mawson maintains that, pursuant to the Statutory Construction Act, because the words of this statute are unambiguous, they are not to be disregarded "under the pretext of pursuing the spirit of the statute" or to avoid a perceived harsh result. *See* 1 Pa.C.S. § 1921(a).

In the alternative, Mawson posits that the lower court erred in its interpretation of Section 221.40(a). In this regard, Mawson first challenges the lower court's predicate finding that a POC is akin to a petition under the Pennsylvania Rules of Civil Procedure, noting that the court cited no support for that conclusion. Mawson argues that there is no basis in the statute or in petition practice for the lower court's conclusion that a POC should be deemed no different than any other petition filed against an adversary in civil practice.

Moreover, Mawson submits, the lower court misapprehended the public policy underlying the liquidation statute and its

in the Commonwealth Court's original jurisdiction and then avers that this Court has jurisdiction pursuant to Section 723. Mawson's Brief at 1. Ruhl does not challenge jurisdiction. We are satisfied that the order below, which denied Mawson the benefit of the POC and release Ruhl had filed in the liquidation proceeding, is a final, appealable order.

release component. The purpose of the statute, as squarely set forth in Section 221.1(c), is to balance and protect the interests of the insured, creditors and the public by minimizing legal uncertainty and litigation, and thereby, Mawson argues, the statute seeks to ensure an "equitable apportionment of any unavoidable loss." *See* 40 P.S. § 221.1(c).[18] Mawson submits that the lower court's essentially *ad hoc* approach compromises the certainty that is supposed to result from the statutory POC release provision. Mawson asserts that, once Ruhl filed the POC, both Mawson and Ruhl were intended to benefit from this statutory scheme—Ruhl by being afforded third party standing to ensure some sort of recovery in the liquidation matter, with Mawson receiving the functional equivalent of the protection of the original insurance policy. The lower court's approach, in Mawson's view, directly negates the purpose of the statute.

In a further contingent argument, Mawson contends that even assuming that a third party POC is subject to withdrawal, President Judge Colins erred in finding withdrawal appropriate upon a court's discretionary finding that the insured would not be disadvantaged. Mawson notes that there is no statutory, procedural or decisional authority in Pennsylvania to support such a standard in the POC withdrawal paradigm. Moreover, Mawson notes that both parties here were "disadvantaged" as a result of Reliance's insolvency, and Mawson clearly was further disadvantaged by Ruhl's being permitted to withdraw his POC. Absent the release, Mawson notes that it is now individually obligated to Ruhl for the portion of the jury verdict above the PPCIGA statutory limit of $300,000. In this regard, Mawson explains that although Federated agreed to assume Mawson's defense in the underlying tort action, Federated was not obligated to (and in fact did not) agree to indemnify Mawson for any liability below the trigger for its excess coverage. Mawson posits that withdrawal, if

---

**18.** Mawson also cites to the Comments to the Wisconsin Act to support its public policy argument. Further, Mawson argues that because the Pennsylvania Act is almost identical to the Wisconsin Act, Section 1927 of the Pennsylvania Statutory Construction Act regarding application of uniform statutes, 1 Pa.C.S. § 1927, applies.

appropriate at all, should be permitted only where there is proof of fraud, collusion or other extraordinary circumstances.

Finally, Mawson disputes Ruhl's contention below that he was beguiled into filing the POC by Mawson's non-disclosure of its excess insurance policy. Mawson maintains that the 1998 interrogatories were answered truthfully because Ruhl sought disclosure of Mawson's automobile insurance carrier information, and Mawson supplied Ruhl with that very information, *i.e.*, the $1,000,000 insurance policy with Reliance. Mawson asserts that it did not deny or conceal the existence of the $10,000,000 Federated excess insurance coverage because Ruhl did not ask about "excess" insurance coverage.

Ruhl's responsive arguments also mirror those he presented below. Ruhl opposes a plain language reading of the statute, reasoning, as President Judge Colins did, that such an interpretation would produce a harsh and draconian result that the statute does not intend. Ruhl also notes that nothing in the statute expressly and affirmatively **prohibits** the withdrawing of a POC; surely, he submits, if the General Assembly intended such a prohibition, it could have included language that would explicitly bar withdrawal. In the absence of such an express prohibition against withdrawal, Ruhl argues, the lower court properly analogized the filing of a POC to petition practice, and properly adopted a petition practice standard of permitting a POC withdrawal upon cause shown.

Ruhl also contends that Mawson's discovery answers in the tort action, which were provided prior to the filing of the POC, were inaccurate to the extent they failed to reveal the existence of its excess insurance coverage. In light of that fact, he argues, President Judge Colins did not abuse his discretion in finding that Ruhl may withdraw the POC. Ruhl suggests that, for any POC and attendant release to be valid, it must have been knowingly and voluntarily executed and filed. Ruhl argues that the fact that he had no knowledge of Mawson's excess insurance coverage at the time he filed the POC calls into question whether it was knowing and voluntary. Citing the settled principle of construction that a statute must be construed in a fashion that will avoid absurd or unreasonable

results, *see Eritano v. Commonwealth,* 547 Pa. 372, 690 A.2d 705 (1997), Ruhl posits that there would be an absurd result, and it would violate public policy, if he were precluded from withdrawing his POC because Mawson would then benefit from the non-disclosure of its excess insurance coverage.

The question of whether a POC filed during an insurance company liquidation pursuant to Section 221.40(a) may be withdrawn is one of statutory construction and, as such, it poses a pure issue of law, meaning this Court's review is plenary. *Commonwealth ex rel. Dist. Attorney of Blair County,* 583 Pa. 620, 880 A.2d 568, 570 (2005); *Siekierda v. Commonwealth, Dept. of Transp., Bureau of Driver Licensing,* 580 Pa. 259, 860 A.2d 76, 81 (2004). The objective of interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a); *see also Walker v. Eleby,* 577 Pa. 104, 842 A.2d 389, 400 (2004). Generally, the best indication of legislative intent is the plain language of the statute. *Commonwealth v. Shiffler,* 583 Pa. 478, 879 A.2d 185, 189 (2005); *Allegheny County Sportsmen's League v. Rendell,* 580 Pa. 149, 860 A.2d 10, 15 (2004). Thus, it is well settled that when the words of a statute are clear and unambiguous, they are "not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b); *Pennsylvania School Boards Ass'n, Inc. v. Commonwealth, Public School Employees' Retirement Bd.,* 580 Pa. 610, 863 A.2d 432, 436 (2004) ("Where the words of a statute are clear and free from ambiguity the legislative intent is to be gleaned from those very words.") (quoting *Pennsylvania Financial Responsibility Assigned Claims Plan v. English,* 541 Pa. 424, 664 A.2d 84, 87 (1995)). Furthermore, the "[w]ords and phrases [of a statute] shall be construed according to rules of grammar and according to their common and approved usage[.]" 1 Pa.C.S. § 1903(a); *see also In re Nomination Papers of Lahr,* 577 Pa. 1, 842 A.2d 327, 330 (2004). It is only when the words of the statute are not explicit that the court should seek to determine the General Assembly's intent through consideration of statutory construction factors. 1 Pa.C.S. § 1921(c). Finally, when ascertaining the intent of the

General Assembly, we are mindful of the general command that we presume that it "does not intend a result that is absurd, impossible of execution or unreasonable." 1 Pa.C.S. § 1922(1); *see also Street Road Bar & Grille, Inc. v. Pennsylvania Liquor Control Bd.*, 583 Pa. 72, 876 A.2d 346, 353 (2005).

■ Section 221.40(a) plainly provides that the "filing of the [POC] shall operate as a release of the insured's liability to the third party on that cause of action in the amount of the applicable policy limit[.]" 40 P.S. § 221.40(a). The use of the word shall, of course, is crucial. This Court has emphasized that, while "some contexts may leave the precise meaning of the word 'shall' in doubt, ... this Court has repeatedly recognized the unambiguous meaning of the word in most contexts." *In re Canvass of Absentee Ballots of November 4, 2003 General Election*, 577 Pa. 231, 843 A.2d 1223, 1231 (2004). *Accord Buck v. Beard*, 583 Pa. 431, 879 A.2d 157, 161 (2005) ("The Legislature used the mandatory language *shall* in authorizing the deductions."); *Zane v. Friends Hospital*, 575 Pa. 236, 836 A.2d 25, 32 (2003) ("the verbiage that the documents '*shall* be kept confidential' is plainly not discretionary but mandatory"); *Cranberry Park Associates ex rel. Viola v. Cranberry Township Zoning Hearing Board*, 561 Pa. 456, 751 A.2d 165, 167 (2000) ("Here, the word 'shall' denotes a mandatory, not permissive instruction."); *Oberneder v. Link Computer Corp.*, 548 Pa. 201, 696 A.2d 148, 150 (1997) ("By definition, 'shall' is mandatory."); *Coretsky v. Board of Commissioners of Butler Township*, 520 Pa. 513, 555 A.2d 72, 74 (1989) ("[T]here is no latitude for overlooking the plain meaning" because by definition, "shall" is mandatory.). When faced with a context rendering it unclear whether the word shall is intended to have its usual, mandatory meaning, the Court on occasion has looked to the apparent intent of the General Assembly and the purpose of the statute. *See Division 85, Amalgamated Transit Union v. Port Authority of Allegheny County*, 417 Pa. 299, 208 A.2d 271, 272 (1965). Significantly, however, this Court has recognized that the term " 'shall' is mandatory for purposes of statutory construction when a

statute is unambiguous." *McCafferty,* 758 A.2d at 1165 n. 13 (construing *Oberneder,* 696 A.2d at 150–51).

■ In the case *sub judice,* neither Ruhl nor the court below have suggested that the word "shall," as employed in Section 221.40(a) to describe the release effect of the filing of a POC, is ambiguous. And, viewing the subsection as a whole, the term plainly bears its usual, mandatory meaning. Certainly, there is no textual ambiguity: "the filing of the claim shall operate as a release." Moreover, the fact that the provision goes on to list a single circumstance where the release may be rendered null and void—"if the insurance coverage is avoided by the liquidator"—merely reinforces that, in other instances, the imperative, absolute effect controls. Therefore, under the statute's plain meaning, when a third party POC is filed in an insurance liquidation, that very filing acts as a release of the insured's liability to the third party on that action in the amount of the applicable policy limit.

■ Ruhl is correct, of course, that the statute does not specifically state that the party who tenders a POC cannot later withdraw it. But this circumstance neither creates an ambiguity nor warrants interpreting the statute in a fashion that would negate what its affirmative language commands. The statute commands that the **filing** operates as the release. Given the mandatory language employed, it was not necessary for the General Assembly to tediously list, and then disavow, all litigation measures that might seek to undo the imperative language. Where mandatory language is employed, there is no need to engage in the redundancy of disapproving individual exceptions. What is more significant is that the plain language of the statute explicitly recognizes one and only one manner of nullifying the release—where the liquidator avoids coverage. That fact strongly suggests that the General Assembly knew how to recognize an exception, and intended no other exceptions than the single one it listed. A right to withdraw a filed POC is simply not expressed nor is it implied in the plain language of Section 221.40(a).

 In light of the plain language of the statute, the lower court's reasoning (and Ruhl's current argument) that the statute cannot be read to preclude withdrawal of the POC because such would lead to a harsh or draconian result purportedly in conflict with the spirit of the statute simply misses the mark. Where it is unambiguous, the plain language controls, and it cannot be ignored in pursuit of the statute's alleged contrary spirit or purpose.[19] The statutory language and its effect being clear, we could end our analysis here. But, given the trial court's concern with the implications of enforcing the plain meaning, as well as the fact that this case implicates a uniform act, *see* discussion *infra*, it is important to note that a plain language interpretation and enforcement of the statute is consonant with its purpose and does not, in our view, produce a harsh, absurd or unreasonable result.

Section 221.1 of the Act, which outlines the "construction and purpose" of Article V, provides as follows:

The purpose of this article is the protection of the interests of insureds, creditors, and the public generally, with minimum interference with the normal prerogatives of the owners and managers of insurers, through (i) early detection of any potentially dangerous condition in an insurer, and prompt application of appropriate corrective measures; (ii) improved methods for rehabilitating insurers, involving the cooperation and management expertise of the insurance industry; (iii) enhanced efficiency and economy of liquidation, through clarification and specification of the law, to minimize legal uncertainty and litigation; (iv) equitable apportionment of any unavoidable loss; (v) lessening the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this Commonwealth; and (vi) regulation of the insurance business by the impact of the

---

19. Given our plain meaning conclusion in the text, we must also reject the lower court's determination to interpret Section 221.40(a) in light of the Rules of Civil Procedure and petition practice.

law relating to delinquency procedures and substantive rules on the entire insurance business.

40 P.S. § 221.1(c). Section 221.1(b) further provides that the statute "shall be liberally construed to effect the purpose stated in subsection (c)." *Id.* § 221.1(b). *See also Foster v. Mutual Fire, Marine and Inland Ins. Co.*, 544 Pa. 387, 676 A.2d 652, 661 (1996) ("one of the purposes of the Act is the protection of the interests of insureds, creditors, and the public generally") (quotation omitted); *Koken v. Colonial Assur. Co.*, 885 A.2d 1078, 1095 (Pa.Cmwlth.2005) ("purpose [of Article V is] to protect the interests of insureds, creditors, and the public generally[.]"); *Koken v. Steinberg*, 825 A.2d 723, 726 (Pa.Cmwlth.2003) ("[I]t is now settled law in Pennsylvania that an insurance regulator is charged not only with representing the public interest but the interests of policyholders and creditors as well."); *Foster v. Rockwood Holding Co.*, 158 Pa.Cmwlth. 258, 632 A.2d 335, 338 (1993) ("The purpose of Article V . . . of Pennsylvania's Insurance Act is to protect the interests of insureds, creditors and the public generally.").

▮ In considering the practical consequences of the General Assembly's statement of purpose, another factor to consider is that Section 221.40(a) is taken from a model act, which other states have also enacted. Section 1927 of the Statutory Construction Act directs that, "[s]tatutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them." 1 Pa.C.S. § 1927. Although statutes, commentary and decisions of our sister states are certainly not binding on this Court, it is important in construing a uniform act to recognize how those states have interpreted similar provisions. *See Sternlicht v. Sternlicht*, 583 Pa. 149, 876 A.2d 904, 911 n. 13 (2005) ("[I]n construing a uniform law, this Court must consider the decisions of our sister states who have adopted and interpreted such uniform law and must afford these decisions great deference."); *Continental Ins. Co. v. Schneider, Inc.*, 582 Pa. 591, 873 A.2d 1286, 1294 n. 10 (2005) ("Although these cases involved other jurisdictions' versions of the UCC, they are nevertheless persuasive authority here as the relevant provisions in their UCC statutes are

substantially similar to the provisions in the Pennsylvania UCC[.]"); *Commonwealth v. National Bank & Trust Co. of Central Pennsylvania,* 469 Pa. 188, 364 A.2d 1331, 1335 (1976). ("While it is a truism that decisions of sister states are not binding precedent on this Court, they may be persuasive authority, ... and are entitled to even greater deference where consistency and uniformity of application are essential elements of a comprehensive statutory scheme like that contemplated by the Uniform Commercial Code.") (citations omitted).

As we have noted above, Article V follows from the NAIC's Model Act, and that Model Act, in turn, was based upon the comprehensive statutory scheme for the rehabilitation and liquidation of insolvent insurance companies that Wisconsin enacted in 1967. *See* WIS. STAT. § 645.01 *et seq.* The Model Act was then enacted by the Pennsylvania General Assembly in 1977 and incorporated into the larger Insurance Department Act as Article V. *See* Pub.L. No. 280, No. 92, 2 (1977). A number of other states have also adopted the Model Act. *See* Stephen W. Schwab, et al., *Cross–Border Insurance Insolvencies: The Search For A Forum Concursus,* 12 U.PA.J.INT'L BUS.L. 303 (1991).[20]

The parties' arguments, and this Court's independent research, have revealed very little caselaw discussing the effect of a POC release in an insurance company liquidation, and no cases where the third party plaintiff claimed a right to withdraw a filed POC prior to the liquidator's alleged acceptance. Indeed, the parties cite only to two intermediate appellate decisions from Florida, and what may be gleaned from those cases is equivocal.[21] What is more helpful is a consideration of

**20.** We are mindful that Section 1927 utilizes the term "uniform" and the NAIC Model Act is not called a uniform act. The Statutory Construction Act, 1 Pa.C.S. §§ 1901–1991, does not define the term "uniform," nor does it limit Section 1927's application to statutes specifically entitled "uniform." It seems clear, however, that the purpose of the provision, which is to promote consistent interpretations across state lines, is implicated in an instance such as this one, where many states have adopted the same act.

**21.** The Florida statute is materially identical to Section 221.40(a), as it provides that: "The filing of a claim constitutes a release of the insured

the Wisconsin legislature's comments in adopting what is, in essence, the blueprint for the Pennsylvania statute.[22] The Wisconsin legislature included the following comments to Section 645.64(1) of the Act:

> This section provides for the third party claimant to make a choice between pursuing his claim against the insured and presenting his claim in the liquidation. At first blush it would seem harsh and unnecessary to force such a choice. But this is not the case. Before he has to choose, the claimant has every opportunity to determine whether the insured is individually financially responsible. If he is, the claimant can proceed against him, rather than take his chances in the liquidation. If the insured is judgment proof

from liability to the claimant to the extent of the coverage or policy limits provided by the insolvent insurer." F.S.A. § 631.193. Mawson cites *Ramos v. Jackson*, 510 So.2d 1241, 1241–42 (Fla.Dist.Ct.App.1987) (*per curiam*), which includes the following discussion of the Florida Act:

> The trial court held that ... once an election to seek relief under section 631.193 ... is made the insured is released, and furthermore that such election may not be withdrawn. We find no error and affirm.... We do not find that such a provision amounts to a denial to access to the courts pursuant to Article I, Section 21 of the Florida Constitution ... as the injured party has a right to either seek relief against alleged tortfeasors or waive same and seek relief from the receiver of the insolvent insurer.

See also *In re International Forum of Florida Health Benefit Trust*, 607 So.2d 432, 441 (Fla.Dist.Ct.App.1992). (Under *Ramos*, "once a party has elected to file a claim with a receiver, rather than seeking direct relief against the insured, the election may not be withdrawn."). Although these cases enforced the Florida release provision according to its plain meaning, Ruhl rightly notes that *Ramos* was a *per curiam* decision. Moreover, the "denial of access" challenge which was at issue in *Ramos* is not the same as the right to withdraw a POC claim which was forwarded and accepted here.

22. Section 645.64(1) of the Wisconsin Act is materially identical to Section 221.40(a) of the Pennsylvania Act:

> (1) Third party's claim. Whenever any third party asserts a cause of action against an insured of an insurer in liquidation, the third party may file a claim with the liquidator. The filing of the claim shall release the insured's liability to the third party on that cause of action in the amount of the applicable policy limit, but the liquidator shall also insert in any form used for the filing of third party claims appropriate language to constitute such a release. The release shall be void if the insurance coverage is avoided by the liquidator.

Wis Stat. § 645.64(1).

or of doubtful solvency, the claimant can claim in the liquidation.

* * *

Sub. (1): By putting pressure on the third party to release the insured to the extent of the applicable policy limit if he wishes to make a claim in the proceeding, the liquidation can at least help make the insurance fund do the job of protecting the policyholder. It is unfortunate that the innocent third party must relinquish his right against the insured in order to claim in the liquidation but in no other way is it possible to settle the matter expeditiously, efficiently and equitably. The notion that the election is valid only if there is effective insurance does elementary justice. Sub. (2): It is entirely fair to the third party claimant to compel him to elect whether to share in the liquidation or exercise rights against the insured. This is a burden upon him, but is a reasonable allocation to him of part of the total burden imposed by an insolvency. If he claims in the liquidation, he must release the insured. If he does not claim, but pursues the insured instead, then of course the insured will have to pay any judgment in full if he is not judgment proof. The insured, if he has filed a timely claim, is entitled to payment from the liquidation proceeding the appropriate percentage of the amount allowed on his claim, though the judgment against him will not be conclusive as to the value of his claim in the liquidation.

Wis. Stat. § 645.64(1) (Comments L. 1967, C. 89, § 17).

This prescient explanation of legislative purpose, while not binding on this Court, squares with what is conveyed by the plain language and structure of the Pennsylvania statute, as well as the legislative purpose of Article V as outlined by our own legislature in Section 221.1(c). Our General Assembly noted that two significant goals of Article V are to "minimize legal uncertainty and litigation," and to provide "equitable apportionment of any unavoidable loss." The Act poses a difficult decision for a third party plaintiff, a difficulty made necessary by the unfortunate and uncontrollable fact of the insolvency, a fact which affects the plaintiff and the insured alike. The Act also fixes the point of that decision at the time

when the plaintiff files the POC, thus indicating his election to seek relief via the liquidation proceeding. That filing creates an expectation of some measure of security for the plaintiff as well as the insured policy holder. There is nothing harsh or draconian in the General Assembly's determining that, once such an election is made to participate in the liquidation proceeding, the election controls. Such a fixed point obviously minimizes uncertainty and reduces litigation. Moreover, the plaintiff has ample opportunity before making his election to determine whether the insured is individually financially responsible such that it may be to his advantage not to seek relief via liquidation.[23] For these reasons, in this Court's view, enforcement of the statute according to its plain and unambiguous terms is fully consistent with the articulated legislative purpose.[24]

For the foregoing reasons, we hold that the Commonwealth Court erred in permitting Ruhl to withdraw his POC. Accordingly, we reverse the order of the Commonwealth Court and remand for proceedings and disposition consistent with this opinion.[25] Jurisdiction is relinquished.

**23.** In the instant case, Ruhl filed his POC with the Liquidator on January 25, 2002–ten days after the Liquidator mailed the paperwork. Notably, Ruhl's deadline for filing his POC was December 31, 2003. The statutory scheme as enacted by the Liquidator thus provided ample opportunity for Ruhl to investigate his options.

**24.** In addition to the fact that we fail to see how holding a third party plaintiff to his election pursuant to the plain language of the statute is contrary to the legislative purpose as a matter of construction, it is difficult to follow the claim, implicitly accepted by the lower court here, that the plain language result is harsh and draconian in this case. Ruhl elected both to file a POC, thereby limiting his recovery under Mawson's primary insurance policy, and to proceed with his tort action against Mawson—a course which made sense only if Ruhl hoped or expected that there was some source (excess insurance or Mawson's resources) to satisfy a monetary judgment rendered in an amount beyond the $1,000,000 limit of the Reliance Policy. Discovery of the excess policy with Federated—the fact which the lower court cited as warranting withdrawal of the POC—at best might have **confirmed** the litigation decision to continue with the tort action which Ruhl already had made. It is not self-evident how the alleged non-disclosure can be said to have prejudiced Ruhl by causing him to file the POC.

**25.** In light of the broad nature of the Commonwealth Court's resolution, and the uncertain and incomplete state of the record, it is not

Chief Justice CAPPY, Justices NEWMAN, SAYLOR, EAKIN and BAER join the opinion.

Former Justice NIGRO did not participate in the decision of this matter.

apparent whether our review disposes of all questions properly presented in the litigation below. It will be for the Commonwealth Court to determine, in the first instance, the independence and viability of any other presented challenges Ruhl raised to Mawson's petition to enforce the POC.