# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dambman and       :
Jayne Dambman, Husband and Wife;  :
Casimir Seweryn and Jennifer Seweryn, :
Husband and Wife; Stephen Chellew;  :
Ann Morton; Enid Maleeff;     :
Robert Kuneck and Danielle Kuneck,  :
Husband and Wife; Emmett Miller   :
and Judy Mesirov, Husband and Wife;  :
Ryan McCleary and Mary McCleary;  :
William Cook and Sandy Hirsch;   :
Michael Gordon and Jaime Gordon,  :
Husband and Wife;       :
David Kannerstein and Winnie Lanoix,  :
Husband and Wife; Andrew Metzger;  :
Susan Ginsberg; Seymour Prystowsky  :
and Cochava Prystowsky, Husband   :
and Wife; Eleanor Klatt; Paul Gauvreau :
and Martha Gauvreau, Husband and Wife; :
Margaret Wrightson; John Dempsey  :
and Carrie Dempsey, Husband and Wife; :
Susan Jacobs; Joseph Kim;    :
Thomas Ferrara and Mary Ferrara,  :
Husband and Wife,      :
      Appellants   :
           :
    v.      : No. 1883 C.D. 2016
           : Argued: May 1, 2017
           :
Board of Supervisors of Whitemarsh  :
Township, The Hill at Whitemarsh   :
and The Whitemarsh Foundation   :

BEFORE:  HONORABLE MARY HANNAH LEAVITT, President Judge
     HONORABLE RENÉE COHN JUBELIRER, Judge
     HONORABLE MICHAEL H. WOJCIK, Judge

OPINION
BY PRESIDENT JUDGE LEAVITT     FILED: October 6, 2017

Robert Dambman and 32 other residents of Whitemarsh Township (collectively, Objectors) appeal an order of the Court of Common Pleas of Montgomery County (trial court) upholding the Whitemarsh Township Board of Supervisors' approval of a preliminary and final land development plan filed by intervenor The Hill at Whitemarsh (The Hill).[1] Objectors argue that the Board of Supervisors erred in approving The Hill's plan because it did not first obtain zoning relief for a temporary construction access road. Because the Township's Subdivision and Land Development Ordinance[2] did not require The Hill to secure a zoning permit in advance of filing its land development plan, we affirm.

The Hill operates a continuing care retirement community in Whitemarsh Township. Under its conditional preliminary land development plan approved in 2004, the retirement community was to be completed in two phases. Phase One was completed in 2007 with 86 single-family residences, 179 apartments and 80 health care units. Phase One currently houses approximately 350 senior citizen residents. Notes of Testimony (N.T.), 5/26/2016, at 3; Reproduced Record at 135a (R.R. __). The planned Phase Two of development will expand the retirement community to include additional senior residences, a community center and an upgraded nursing care unit.[3] N.T., 5/26/2016, at 5-6; R.R. 136a.

---

[1] Whitemarsh Township is not participating in this appeal but joins in the brief and oral argument of The Hill.

[2] SUBDIVISION AND LAND DEVELOPMENT ORDINANCE OF WHITEMARSH TOWNSHIP (SALDO). The SALDO can be found at Chapter 105 of the Code of the Township of Whitemarsh, available at http://ecode360.com/11706746 (last visited September 5, 2017).

[3] In the original preliminary plan, The Hill planned to build single-family residential villas in Phase 2. It now intends to build five multi-family buildings instead. N.T., 5/26/2016, at 5-6; R.R. 136a.

On November 12, 2015, The Hill filed a land development application titled "Amended Preliminary Final Phase 2" with the Board of Supervisors seeking final approval for Phase 2 of the retirement community. The application described a road that construction vehicles would use to access The Hill's property during construction of Phase 2. The location of this access road is the subject of Objectors' appeal.

The Hill's application stated that it had been granted a temporary construction easement by an adjoining property owner, the Whitemarsh Foundation (Foundation), whose land abuts the property where The Hill will do the Phase 2 construction. The Foundation's property is subject to a conservation easement set forth in an agreement titled "Declaration of Conservation and Open Space Easements, Covenants and Restrictions" (Declaration).[4] The Declaration provides that the Foundation will grant a temporary construction easement to The Hill in exchange for The Hill granting the Foundation an easement across its property for a trail corridor between The Foundation's property and the property of a neighboring school district.[5]

---

[4] The Declaration was entered into in 2008 by the Colonial School District, Whitemarsh Township, Montgomery County, and the Foundation. Declaration at 1; R.R. 7a.

[5] The Declaration provides:

> (g) Temporary Construction Access Easement.
>
> Provided the Hill at Whitemarsh ("Hill") has granted a permanent easement for a trail corridor between the Property and property owned by the District (at no cost to the Taxing Bodies), the Foundation shall have the right to grant a temporary construction access easement of no longer than six (6) months or such longer period as permitted by the Review Committee following the date the first occupancy permits are issued to Hill with respect to Phase II, to be located at such places on the Property which may include a portion of Tract A or the Township Residual Area (and which may not include any portion of Tract C, the

2

Originally, The Hill proposed to place its temporary construction access road over an existing service road on the Foundation's property. That service road lies approximately 15 feet from several of the Objectors' rear property lines. In response to Objectors' concerns, The Hill's application moved the temporary access road 35 feet further away from their property lines and closer to the interior of the Foundation's property.[6]

On March 22, 2016, the Township Planning Commission held a meeting on The Hill's development plan. Representatives of the Foundation, The Hill, and Objectors were present at the meeting, and the minutes reflect that those in attendance discussed the location of the temporary access road. The Planning

---

Wetland/Environmental Area and/or the Student Garden Area), as shall be approved by the Review Committee, after due consideration of the interests of neighbors, whatever other uses to which the Field Areas are then being put, and the importance of avoiding permanent environmental damage. In the event the grant of the temporary construction access easement contemplated hereby shall materially impact or impede the free and unrestricted use of any of the easements and easement areas provided for herein, then prior and as a condition to the grant of a temporary construction access easement as contemplated hereby, the Foundation shall grant to the Taxing Bodies easements for alternate Trails and parking areas, as applicable, providing similar access and opportunities to cross the Property at approximately the same locations as the Trails being displaced, upon such terms and conditions as are consistent herewith and are reasonably acceptable to the Review Committee acting unanimously. In the event Tract A shall be conveyed to the Township as contemplated herein, upon receiving and during the periods set forth in a written request from the Foundation, the Township shall grant the temporary construction access easement across Tract A as provided above. The location of the temporary construction access easement provided for herein may be relocated on the Property upon the approval of the Review Committee.

Declaration 2.02(g); R.R. 13a-14a.

[6] The Foundation explained that The Hill's proposed location for the temporary construction access road, setting it back 35 feet more than previously contemplated, was as far into the Foundation's property as the road could be located without violating terms of the Declaration. Planning Commission Minutes, 3/22/2016, at 2; R.R. 131a.

3

Commission determined that it lacked jurisdiction over the access road's location. Planning Commission Minutes, 3/22/2016, at 2; R.R. 131a. At the conclusion of the meeting, the Commissioners unanimously recommended that the Board of Supervisors approve The Hill's application.

On May 26, 2016, the Board of Supervisors convened a meeting to consider whether to approve Phase 2 of The Hill's project. The Hill's representatives made a presentation in support of the application and offered several exhibits. One exhibit was a letter to The Hill from the Township's Director of Planning and Zoning, who is also a zoning officer for the Township, stating that it was "a review of the Zoning Ordinance Compliance issues" for The Hill's Phase 2 construction plans. Regarding the temporary construction access road, the letter stated:

> The plans show a proposed "temporary construction access road" extending through the adjacent property owned by [the Foundation]. The plans cannot be approved until all structures and/or uses for the lot(s) are located entirely within the property boundaries, *or easements are established to allow these features to be located as shown.*

R.R. 175a (emphasis added).

At the conclusion of The Hill's presentation, several Objectors objected to the location of the temporary construction access road. They asserted that the access road should be sited further away from Objectors' rear property lines.[7]

---

[7] Objectors' testimony revolved largely around a Transportation Impact Study Supplement (Impact Study) prepared by The Hill's engineer. The Impact Study listed seven possible access road options. R.R. 67a-86a. It recommended Access Alignment E, which is the route currently proposed in The Hill's application that is offset 35 feet from the existing service road. The Impact Study stated:

4

At the conclusion of the meeting, the Board of Supervisors adopted a resolution approving the preliminary and final land development plan subject to numerous conditions, including compliance with the comments of the Township's Director of Planning and Zoning in his zoning ordinance compliance review letter to The Hill. R.R. 175a.[8] With respect to the temporary construction access road, the resolution listed ten conditions for approval.[9]

---

> Based on the analysis of the alternative locations as well as the estimated construction traffic expected to use the construction access, Alignment E (Offset to Existing Service Road) is the recommended alternative. It is the shortest access with the least impact to the smallest number of residents[.] This alternate reduces impacts and provides an increased degree of safety to the neighbors along Fountain Green Road by offsetting the existing service drive approximately 35-feet from the western property line; it limits impacts to the farm and pasture operations as much as possible; and it will provide a PennDOT compliant driveway configuration with Flourtown Road that will adequately accommodate construction vehicle turning maneuvers. This access will also keep construction related traffic to/from the site separate from traffic on Fountain Green Road, Pheasant Lane and Fox Hound Drive and it will therefore have no impact on emergency access along these streets. Additionally, it is intended that the temporary construction access becomes a permanent trail easement for use by the public. The location of Alignment E would maximize the length of the pedestrian trail system while still providing separation from the adjacent properties.

Impact Study at 8; R.R. 75a. Objectors argue that The Hill should use one of the alternative routes.

[8] The resolution stated, *inter alia*:

> [T]he Plan is hereby granted Conditional Preliminary and Final Land Development Approval subject to the satisfaction of the following conditions by [The Hill]:
>
> ***
>
> 2. Compliance with all comments as outlined in the Zoning Ordinance Compliance Review of S/LD #03-13 dated March 16, 2016, prepared by Charles L. Guttenplan, AICP, Whitemarsh Township Director of Planning and Zoning/Zoning Officer….

Resolution at 1; R.R. 165a.

[9] The conditions require The Hill to, *inter alia*, (1) offer to install reasonable temporary landscaping buffers between Objectors' rear property lines and the temporary access road; (2) erect a six-foot high fence between Objectors' rear property lines and the temporary access road; (3) offer Objectors the opportunity to have a vibration monitoring baseline established, free of cost;

On June 24, 2016, Objectors filed a land use appeal with the trial court. They argued that the Board of Supervisors erred in approving The Hill's final plan because it had not first secured the necessary zoning permit for the temporary construction access road, which is not a use permitted in the applicable residential zoning district. On October 20, 2016, following oral argument, the trial court affirmed the decision of the Board of Supervisors.

In support of its order, the trial court issued an opinion that explained:

> None of the [Objectors] or their counsel expressed any objection that the temporary road or its proposed use violated any zoning regulations. Because the [Objectors] failed to raise the instant zoning claims before the [] Board [of Supervisors] during the land development approval process, these zoning claims have been waived.

Trial Court Opinion, 1/13/2017, at 10. Despite finding Objectors' zoning challenge waived, the trial court addressed the merits of their appeal. The trial court concluded that the Township's SALDO does not require that a zoning permit be secured prior to approval of an application for land development. Accordingly, the trial court did not undertake an analysis of the Township's zoning ordinance.[10]    On November 10, 2016, Objectors appealed to this Court.

---

and (4) limit the temporary access road's hours of operation. Board Resolution at 4-5; R.R. 168a-69a.

[10] WHITEMARSH TOWNSHIP ZONING ORDINANCE OF 1957 (Zoning Ordinance). The Zoning Ordinance can be found at Chapter 116 of the Code of the Township of Whitemarsh, available at http://ecode360.com/11708888 (last visited September 5, 2017).

On appeal,[11] Objectors raise several issues.  First, they contend that the trial court erred in holding that they waived their claim that the temporary construction access road violated the Zoning Ordinance.  Second, on the merits, Objectors maintain that under the Pennsylvania Municipalities Planning Code (MPC)[12] and the Zoning Ordinance, The Hill was required to obtain zoning relief for the temporary construction access road before it sought approval of its land development plan. Zoning relief was required because: (1) the temporary construction access road is a "use" under the Zoning Ordinance; and (2) the Foundation's property is located in the "AAA Residential District,"[13] where a temporary construction access road is not a permitted use.  Objectors contend the Board of Supervisors exceeded its authority by approving The Hill's land development plan *before* The Hill secured the necessary zoning relief.

---

[11] "In a land use appeal, where the trial court does not take additional evidence, this Court's scope of review is limited to determining whether the governing body committed an error of law or an abuse of discretion."  *Residents Against Matrix v. Lower Makefield Township*, 845 A.2d 908, 910 (Pa. Cmwlth. 2004).

[12] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

[13] The Zoning Ordinance permits the following uses in the AAA Residential District:

    A.  One single-family detached dwelling.

    B.  Agriculture or horticulture, except the commercial keeping or handling of farm stock or poultry and except commercial greenhouses or establishments for sale of farm or horticulture products.

    C.  Any of the following purposes when authorized as a special exception:

        (1)  Public utility facility, provided that the exterior architectural design shall be of a residential character in conformity with all the regulations of the district and shall at no time be used for the storage of equipment or vehicles or other commercial purposes.

        (2)  Passenger station for public transportation.

    D. An accessory use on the same lot with and customarily incidental to any permitted use, including a home occupation.

ZONING ORDINANCE §116-35.

The Hill responds that Objectors' failure to raise their zoning claim before the Board of Supervisors resulted in waiver of that issue. But even if the issue were not waived, The Hill contends that Objectors' argument fails on the merits. The temporary construction access road is not a "use" as defined in the Zoning Ordinance, and a zoning permit is not required for a temporary construction easement between two adjacent landowners.

We begin with a review of the relevant law. The MPC treats subdivision and land development separately from zoning. Article V of the MPC grants municipalities the authority to "regulate subdivisions and land development within the municipality by enacting a subdivision and land development ordinance." Section 501 of the MPC, 53 P.S. §10501. Article VI of the MPC governs zoning and grants a municipality's governing body the power to "enact, amend and repeal zoning ordinances…." Section 601 of the MPC, 53 P.S. §10601.

Pursuant to its authority under the MPC, Whitemarsh Township enacted its SALDO to "regulate and control the subdivision and development of land within Whitemarsh Township[.]" SALDO §105-2. The SALDO grants the Township's Board of Supervisors exclusive jurisdiction to approve land development applications. SALDO §105-6. Likewise, Whitemarsh Township enacted the Zoning Ordinance to govern zoning matters. Pursuant to the MPC and the Zoning Ordinance, the Township's zoning hearing board has exclusive jurisdiction to hear and render final adjudications in "appeals from the determination of the zoning officer, including but not limited to, the granting or denying of any permit." Section 909.1 of the MPC, 53 P.S. §10909.1;[14] *see also* ZONING

_____

[14] Added by the Act of December 21, 1988, P.L. 1329.

ORDINANCE §116-216. Accordingly, a developer must proceed on dual tracks. It must obtain the Township's approval of its land development plan, and it must obtain a zoning permit for its project.

Objectors' appeal concerns the timing of these dual tracks. Specifically, Objectors argue that zoning approval is required prior to the Board of Supervisors' approval of a final land development plan. This question is governed by the terms of a municipality's SALDO. *See Rickert v. Latimore Township*, 960 A.2d 912, 920 (Pa. Cmwlth. 2008) (holding that the order of land development and zoning applications is determined by the applicable subdivision and land development plan ordinance). In *Borough of Jenkintown v. Board of Commissioners of Abington Township*, 858 A.2d 136 (Pa. Cmwlth. 2004), for example, this Court held that the board of commissioners erred in approving a final land development plan without including a condition for zoning approval because the township's SALDO required the zoning officer to approve the plan before the governing body could approve it. By contrast, in *Rickert*, 960 A.2d at 920, this Court held that the board of supervisors erred in disapproving a land development plan for zoning reasons because the township's SALDO did not require an applicant to receive zoning approval before the board of supervisors granted final approval of the plan.

Here, as in *Rickert*, the Township's SALDO does not require that zoning approvals precede approval of the final land development plan. Section 105-12 of the SALDO outlines the general procedures for approval of subdivision and land development plans. It states, in relevant part:

> E. *The applicant is encouraged to meet informally* with the Township Planner and the Planning Commission to obtain

information regarding zoning and subdivision requirements and development alternatives prior to the initial submission.

SALDO §105-12(E) (emphasis added). During the preliminary and final plan stages, the SALDO requires that the zoning officer receive copies of the plans for review. *Id.* at §§105-14(D)(4)(e), 105-15(D)(5)(c). The zoning officer is then required to consider the applicant's submission and make recommendations to the Township's manager. *Id.* at §§105-14(D)(7), 105-15(D)(7). The Township's SALDO is silent, however, on when an applicant must obtain zoning permits from the zoning officer or, if necessary, variances or special exceptions. Stated otherwise, the SALDO requires the zoning officer to review development plans and make recommendations, but that is all. This does not equate to a mandate that an applicant secure zoning relief before the plan can be approved by the Board of Supervisors.[15] *See Rickert*, 960 A.2d at 920 ("mildly worded advice in the SALDO did not authorize the Supervisors to weave zoning requirements into the final plan review process.").

---

[15] With the submission of the final plan, the Township's SALDO requires that the following be included:

    (d)   Zoning requirements, including:
        [1] Applicable district and district boundaries.
        [2] Maximum density permitted, if applicable.
        [3] Lot size and yard requirements.
        [4] Applicable open space and impervious ground coverage ratios.
        [5] Any variances or special exceptions granted.

SALDO §105-22(B)(1)(d)[1]-[5]. Importantly, the zoning requirements for a proposed development must be identified in the final plan, as well as any previously granted variances and special exceptions. Nowhere in the SALDO is approval of the final plan contingent on the applicant first securing a zoning permit or other relief.

Objectors appeal the Board of Supervisors' approval of The Hill's final plan because they disagree with the zoning officer's compliance review letter.[16] However, under the SALDO, The Hill was not required to secure a zoning permit in advance of the Board of Supervisors' action on its development plan. Because Objectors present no other grounds for reversal, we affirm the trial court's order upholding the Board of Supervisors' approval of The Hill's final plan.

Based upon this conclusion, the parties remaining arguments, which concern the temporary access road's compliance with the Township's Zoning Ordinance, are outside the scope of this appeal.[17] For these reasons, we affirm the trial court's order upholding the Board of Supervisors' approval of The Hill's final land development plan.

_____
MARY HANNAH LEAVITT, President Judge

---

[16] We are cognizant that the Board of Supervisors approved The Hill's plan on the condition that it comply with the zoning officer's "comments" in the zoning compliance review letter. Resolution at 1; R.R. 165a. If permits are issued in accordance with the zoning officer's comments, Objectors may challenge those permits in an appeal to the zoning hearing board.

[17] The trial court lacked jurisdiction to decide that Objectors' zoning claims were waived. *See* Trial Court Opinion, 1/13/2017, at 10. As explained above, Objectors must raise any zoning concerns they have in an appeal to the zoning hearing board from a decision by the zoning officer to issue a permit or grant other zoning relief. *See Borough of Jenkintown*, 858 A.2d at 142.

11

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Dambman and :
Jayne Dambman, Husband and Wife; :
Casimir Seweryn and Jennifer Seweryn, :
Husband and Wife; Stephen Chellew; :
Ann Morton; Enid Maleeff; :
Robert Kuneck and Danielle Kuneck, :
Husband and Wife; Emmett Miller :
and Judy Mesirov, Husband and Wife; :
Ryan McCleary and Mary McCleary; :
William Cook and Sandy Hirsch; :
Michael Gordon and Jaime Gordon, :
Husband and Wife; :
David Kannerstein and Winnie Lanoix, :
Husband and Wife; Andrew Metzger; :
Susan Ginsberg; Seymour Prystowsky :
and Cochava Prystowsky, Husband :
and Wife; Eleanor Klatt; Paul Gauvreau :
and Martha Gauvreau, Husband and Wife; :
Margaret Wrightson; John Dempsey :
and Carrie Dempsey, Husband and Wife; :
Susan Jacobs; Joseph Kim; :
Thomas Ferrara and Mary Ferrara, :
Husband and Wife, :
                Appellants :
                   :
           v. : No. 1883 C.D. 2016
                   :
Board of Supervisors of Whitemarsh :
Township, The Hill at Whitemarsh :
and The Whitemarsh Foundation :

# **O R D E R**

AND NOW, this 6th day of October, 2017, the order of the Court of Common Pleas of Montgomery County dated October 20, 2016 in the above-captioned matter is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge