# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Appeal of Joanne W. Smith and : <br>
Robert L. Whetstone from the Decision : <br>
of the Zoning Hearing Board of West : <br>
Chester Borough :

: <br>
Appeal of:  Joanne W. Smith and : No. 1715 C.D. 2018 <br>
Robert L. Whetstone :

Joanne W. Smith and : <br>
Robert L. Whetstone :

v. :

Zoning Hearing Board of : <br>
West Chester Borough :

v. :

StanAb, LP :

: No. 1725 C.D. 2018 <br>
Appeal of:  StanAb, LP : Argued:  November 12, 2019

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge <br>
HONORABLE CHRISTINE FIZZANO CANNON, Judge <br>
HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION BY <br>
JUDGE FIZZANO CANNON                    FILED:  May 4, 2020

Joanne  W.  Smith  and  Robert  L.  Whetstone  (together,  Neighbors)

appeal from the November 27, 2018 order of the Court of Common Pleas of Chester

County (trial court), which affirmed the decision of the Zoning Hearing Board of the Borough of West Chester (Board) denying their appeal of the issuance of a building permit to StanAb, LP (Applicant).[1] The building permit authorized the construction of an "addition" to an existing office building owned by Applicant within the Borough of West Chester (Borough). At issue here is whether Applicant has the right to construct the "addition" for use as professional offices, which "addition" was approved in a 1997 subdivision and land development application, where professional office use is permitted in the applicable zoning district by conditional use and no evidence was presented showing that conditional use approval was obtained by Applicant or a predecessor in title. Upon review, we affirm on other grounds.

The property at issue in this appeal is located at 535 North Church Street (Property) in the Borough and is improved with a three-story brick building commonly known as the Barclay Building, as well as an accessory building. Board's Findings of Fact (F.F.) 2-4. The Property is, and at all relevant times was, located

---

[1] Neighbors' appeal is docketed at No. 1715 C.D. 2018. Applicant filed a cross-appeal from the trial court's order, which is docketed at No. 1725 C.D. 2018. By order dated March 13, 2019, this Court consolidated the matters and named Neighbors as Designated Appellants pursuant to Pa.R.A.P. 2136. We note that Applicant's cross-appeal at No. 1725 C.D. 2018 appears to be a protective cross-appeal and that one cannot appeal an order from which one is not aggrieved. *See ACS Enters., Inc. v. Norristown Borough Zoning Hearing Bd.*, 659 A.2d 651, 653 (Pa. Cmwlth. 1995) (stating, "a party who [sic] has prevailed in the proceeding below is not an aggrieved party and consequently has no standing to appeal to this Court"). Nonetheless, Neighbors did not file a motion to quash Applicant's protective appeal at No. 1725 C.D. 2018, and as we may not raise this issue *sua sponte*, we will not quash Applicant's cross-appeal. *See* G. Ronald Darlington, e*t al.*, 20 Pennsylvania Appellate Practice § 501:16 (2018-19 ed.) (stating issue of standing to appeal is not jurisdictional and, therefore, may not be raised by Court *sua sponte*; "[t]herefore, failure to raise a standing to appeal issue in a motion to quash or dismiss or in an appellee's brief will result in the waiver of the issue"). Technically, the rationale for Applicant's cross-appeal at No. 1725 C.D. 2018 is an alternate basis to affirm the trial court.

in the NC-1, Block Class B, Neighborhood Conservation zoning district and is in the Professional Office Overlay District.  F.F. 3; Joint Stipulation (Jt. Stip.) ¶¶ 5, 7-8, Reproduced Record (R.R.) at 787a.  Neighbors own adjacent property.  F.F. 1-2.

Prior to 1998, the Barclay Building was used as a home for the care of the elderly.  F.F. 5.  In 1996, the Borough amended its Zoning Ordinance.[2]  F.F. 6. The amendment permitted by conditional use the "conversion of an existing building" located in the NC-1, Neighborhood Conservation zoning district and in the Professional Office Overlay District to a professional office.  F.F. 6; *see* Borough's Zoning Ordinance § 112-12.D.3, R.R. at 607a.

In June 1996, JMA Properties, Inc. (JMA) entered into an agreement of sale intending to acquire a parcel of land (Parcel), which included the Property, for use as professional offices.  *See* F.F. 7.  JMA submitted a subdivision and land development application, including nine sheets of plans, to the Borough for subdivision of the Parcel into two lots, with "Lot 1" being the Property that is the subject of this appeal, and for conversion of the Barclay Building to professional offices.  *See* F.F. 8, Jt. Stip. ¶ 9, R.R. at 787a-88a.  Borough Council approved the subdivision and land development application at its August 20, 1997 meeting.  F.F. 9.  Subsequently, portions of the approved subdivision and land development application, namely, the Plan of Subdivision for the Barclay Building, Sheet 2, and the Plan of Land Development for the Barclay Building, Sheet 3, were recorded as Plan 14109 in the Chester County Recorder of Deeds (collectively, 1997 Plan).  Jt. Stip. ¶ 9, R.R. at 788a.  The approved 1997 Plan depicted the following on Lot 1: the Barclay Building with a gross floor area of 21,000 square feet (s.f.) and a building footprint of 7,428 s.f.; a "Future Addition Building Envelope" (Future Addition)

---

[2] Borough of W. Chester, Pa., Borough of West Chester Zoning Ordinance of 1988.  Joint Exhibit (Jt. Ex.) J-3, R.R. at 565a-751a.

3

with a gross floor area of 18,150 s.f. and a building footprint of 6,050 s.f.; and a parking calculation based on a professional office use for the Barclay Building and the Future Addition. F.F. 10(a-c). The approved 1997 Plan also indicated that the building coverage equals 14,003 s.f. and includes the existing Barclay Building footprint (7,428 s.f.), a new storage shed footprint (475 s.f.), and a future building reserve area (6,100 s.f.). Original Record (O.R.), 1997 Plan, Sheet 3; R.R. at 753a.

Subsequent to the approval, JMA began alterations to the Barclay Building and obtained several building permits, including one in 1998 for alterations to the Barclay Building and a second permit, also issued in 1998, for construction of an accessory building and a 700-square-foot addition to the second floor of the Barclay Building. *See* F.F. 11-13. After the 700-square-foot addition was constructed, the Borough issued a certificate of occupancy for the Barclay Building. F.F. 14. No application for, or approval of, a conditional use to permit the use of the Barclay Building as professional offices has been found. F.F. 15. "No appeals were filed from the approval of the building permits or the certificates of occupancy issued for office use of the Barclay Building." F.F. 17. "The Barclay Building has been continually used as professional offices since 1998." F.F. 16.

In 2013, Applicant acquired the Parcel from JMA. F.F. 18 & 21. On January 15, 2013, after signing the agreement of sale but before making settlement to purchase the Property, Applicant requested that the Borough's zoning officer confirm that a building permit was the only requirement for permission to construct an "addition" to the Barclay Building as contemplated by the previously approved 1997 Plan. F.F. 19; *see* F.F. 18 & 21. That same day, the zoning officer responded that "he would look at the plans and if there were 'no additional steps required by

4

the plans [the Borough] can review the building permit application.'"[3]  F.F. 20.  On February 28, 2013, Applicant settled on the purchase of the Property.[4]  F.F. 21.  On February 23, 2017, Applicant applied to the Borough for a building permit for an "addition" to the Barclay Building.  F.F. 22.

On May 5, 2017, the Borough issued a building permit for the Future Addition.  *See* F.F. 23.  On May 24, 2017, Neighbors appealed the issuance of the building permit to the Board.  F.F. 24.

The Board held multiple hearings.  Ultimately, at a public hearing held on February 12, 2018, the Board denied Neighbors' appeal by oral decision.  Thereafter, the Board issued a written decision, dated March 20, 2018, containing findings of fact and conclusions of law.  In its decision, the Board determined that Neighbors timely appealed the building permit.  Conclusion of Law (C.L.) 2.  The Board also concluded that "[a]lthough there is no evidence that a conditional use was applied for at the time the Barclay Building was converted to professional offices, [Neighbors] do not challenge the legality of the 1998 conversion to professional offices, so that the current professional office use of [the] Barclay Building is a legally permitted use."  C.L. 5.  The Board noted that there is no provision in the Zoning Ordinance that prohibits an "addition" to a legally permitted

---

[3] We note Applicant also states, "JMA repeatedly requested, and the Borough repeatedly approved extensions . . . to JMA's right to build the Future Addition and its protection from any change in the [Zoning Ordinance]."  Applicant's Brief at 9 (citing R.R. at 260a-61a & 791a-92a).  Neighbors mention that "no action was taken with regard to the proposed new building (except for essentially meaningless extensions of the 5-year protection afforded by the [Pennsylvania Municipalities Planning Code (MPC)] § 508, [Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10508], since the ordinances did not change)[.]"  Neighbors' Brief at 48.

[4] At the time Applicant acquired the Parcel, it consisted of Lots 1 and 2 as depicted on the Plan.  Jt. Stip. ¶ 2, R.R. at 786a-77a.  Following acquisition, Applicant sold Lot 2 to the Borough and retained ownership of Lot 1, *i.e.*, the Property at issue here.  *Id.*

professional office in the NC-1, Professional Office Overlay district. C.L. 7. The Board also concluded that, by definition, the "conversion" of a building includes structural changes and enlargements. C.L. 8. The Board concluded that the alteration permitted by the building permit complies with the applicable Zoning Ordinance requirements, reasoning that interpreting the Zoning Ordinance to permit construction of an "addition" to the Barclay Building is supported by the prior approvals of the use of, and construction on, the Property. C.L. 6 & 9.[5]

Neighbors filed an appeal from the Board's oral decision, as well as an appeal from the Board's written decision. Trial Court Opinion[6] (Tr. Ct. Op.) at 4. The trial court consolidated the two appeals. *Id.* Applicant also appealed the Board's decision, but the trial court quashed that appeal based on Neighbors' motion challenging Applicant's standing to prosecute an appeal as the prevailing party. *Id.* at 5. Thereafter, the parties filed briefs with the trial court, and, ultimately, the trial court denied Neighbors' appeal and affirmed the Board's decision. *See* Tr. Ct. Op. at 5-10.

In its decision, the trial court first determined that Neighbors' appeal was timely. Tr. Ct. Op. at 6-7. Next, the trial court agreed with Neighbors that the proposed building changes do not qualify as a "conversion" of the existing Barclay Building. *Id.* at 8. Nevertheless, the trial court concluded that the "proposed changes qualify as a permissible addition within the Professional [Office] Overlay District, the second district within which the Barclay [P]roperty is located" and, therefore,

---

[5] Conclusion of law "9" is actually numbered as 6, but appears after number 8.

[6] All references to the trial court opinion are to the opinion dated November 27, 2018 unless otherwise indicated.

6

issuance of the building permit was proper.  *Id.* at 8 & 10.  Accordingly, the trial court denied Neighbors' appeal.  *Id.* at 10.

Neighbors then appealed to this court, and Applicant filed a cross-appeal.  *See supra* note 1.  Thereafter, the parties each filed a concise statement of errors complained of on appeal.  On February 5, 2019, the trial court issued separate opinions pertaining to each appeal, essentially reaffirming its prior opinion.

Before this Court,[7] Neighbors argue that their appeal is timely and also that the Board erred in determining the building permit was valid because:  (1) the Zoning Ordinance prohibits additions to existing professional office conversions in the NC-1 zoning district; (2) the proposed building is neither an addition nor an alteration, but a separate and distinct building; and (3) the building permit lacked zoning approval.[8]

In response, Applicant argues: (1) it has the right to construct the Future Addition approved in the 1997 Plan despite the Borough's inability to produce written evidence that conditional use approval was obtained by Applicant's predecessor in title; (2) Neighbors appeal is untimely because it seeks to reverse and limit the 1997 Plan; and (3) the Zoning Ordinance does not prohibit additions to

---

[7] Where, as here, the trial court does not take additional evidence, our scope of review is limited to determining whether the Board committed an error of law or "a manifest abuse of discretion."  *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 639 (Pa. 1983).  A zoning board abuses its discretion "only if its findings are not supported by substantial evidence."  *Id.* at 640.  The interpretation of an ordinance is a pure question of law.  *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015).  As to questions of law, our standard of review is *de novo* and our scope of review is plenary.  *Comm'rs of Cheltenham Twp. v. Hansen-Lloyd, L.P.*, 166 A.3d 496, 501 n.4 (Pa. Cmwlth. 2017).

[8] By letter dated February 21, 2019, the Borough notified this Court that it would not be filing a brief or appearing at oral argument in this matter.  By order dated June 25, 2019, this Court precluded the Board from filing a brief and participating in oral argument due to its failure to file a brief as ordered by this Court on May 29, 2019.

buildings lawfully converted to professional office use in the NC-1 District if the proposed addition meets the area and bulk requirements of the Zoning Ordinance. Applicant's Brief at 3.

Neighbors' brief advances arguments with regard to whether the Zoning Ordinance prohibits additions to existing professional office use conversions in the NC-1 zoning district and whether the proposed building is really a new building instead of an "addition." We need not address these arguments or the arguments regarding the timeliness of Neighbors' appeal, however. Because we find that the development of the Future Addition was already approved, we need not decide whether it was an "addition" or a new building. Additionally, Applicant's counterstatement of the issue is dispositive, *i.e.*, whether Applicant has the right to construct the Future Addition approved in the 1997 Plan.

**Whether building permit was properly issued / Whether Applicant has right to building permit**

Professional offices are permitted in the NC-1 zoning district as a conditional use. In this regard, the Zoning Ordinance provides:

> D. Conditional uses:
> . . . .
> Conversion of an existing building to a professional office in a designated Professional Office Overlay District in accordance with §§112-14.E[9] and 112-22.B and .C.[10]

---

[9] Section 112-14.E concerns area and bulk regulations. Zoning Ordinance § 112-14.E; R.R. at 609a.

[10] Section 112-22.B concerns parking, loading and signs in the Professional Office Overlay District, and Section 112-22.C concerns a landscape plan in the Professional Office Overlay District. Zoning Ordinance § 112-22.B, .C; R.R. at 622a.

8

Zoning Ordinance § 112-12.D(3); R.R. at 607a.

We begin our analysis of the role of the 1997 Plan approval as it relates to zoning issues and the issuance of the building permit by noting that we have long recognized "the distinction between land use approval and the concurrent need for zoning approval." *Borough of Jenkintown v. Bd. of Comm'rs of Abington Twp.*, 858 A.2d 136, 142 (Pa. Cmwlth. 2004). In *Dambman v. Board of Supervisors of Whitemarsh Township*, 171 A.3d 969 (Pa. Cmwlth. 2017), we noted that the MPC grants the governing body the authority to regulate subdivisions and land development. *Dambman*, 171 A.3d at 974 (citing Section 501 of the MPC, 53 P.S. § 10501). We also noted that, pursuant to the MPC, a municipality's "zoning hearing board has exclusive jurisdiction to hear and render final adjudications in 'appeals from the determination of the zoning officer, including but not limited to, the granting or denying of any permit.'" *Id.* (quoting Section 909.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1). We described this process as "dual tracks" and addressed the timing of these dual tracks, as the issue before us was whether zoning approval was required prior to the governing body's approval of the land development plan. *See id.* at 970 & 974. We held that the timing question is "governed by the terms of a municipality's [subdivision and land development ordinance]." *Id.* at 974 (citing *Rickert v. Latimore Twp.*, 960 A.2d 912, 920 (Pa. Cmwlth. 2008) (holding that the order of land development and zoning applications is determined by the applicable subdivision and land development ordinance)).

9

Here, at the relevant time period of the application and approval of the 1997 Plan, the Borough's Subdivision and Land Development Ordinance[11] (SALDO) provided:

> No plan of subdivision or land development shall be approved which would result in lots or land use which would in any way be inconsistent with Chapter 112, Zoning of the Code of the Borough West Chester then in effect for the zoning district in which the land to be developed or subdivided is located.

Former SALDO § 97-26.D, Supplemental Reproduced Record (S.R.R.) at 30b. The SALDO provided that the approved final plan shall be recorded. Former SALDO § 97-18, S.R.R. at 29b.

"The word 'shall' by definition is mandatory, and it is generally applied as such." *Chanceford Aviation Props., L.L.P. v. Chanceford Twp. Bd. of Supervisors*, 923 A.2d 1099, 1104 (Pa. 2007). Where, as here, a statute is unambiguous, "the term 'shall' is mandatory for purposes of statutory construction[.]"[12] *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 81 (Pa. 2006); *see Falkler v. Lower Windsor Twp. Zoning Hearing Bd.*, 988 A.2d 764, 768 (Pa.

---

[11] Borough of W. Chester, Pa., West Chester Borough Subdivision and Land Development Ordinance, ch. 97 of the Borough of West Chester Code. This operative version of the SALDO was adopted by Borough Council on August 28, 1991, as Ordinance No. 16-1991, and was effective as of August 1991. Applicant submitted a copy of that SALDO into evidence before the Board as Exhibit SA-12. Portions of that SALDO are reproduced in Applicant's supplemental reproduced record. S.R.R. at 28b-30b. This version of the SALDO was repealed by Ordinance No. 02-2019, effective March 19, 2019. *See* Borough of W. Chester, Pa., Ord. No. 02-2019. Because of the repeal, citations to the operative version of the SALDO will read "Former SALDO," although our text will refer to it simply as the SALDO.

[12] Although Neighbors argue this term is merely directory rather than mandatory they offer no analysis or supporting authority for such statement, *see* Neighbors' Brief at 50, and we disagree.

Cmwlth. 2010) (stating "in matters of statutory construction, when the language of a statute is clear and free from all ambiguity, a court should not disregard the letter of the statute in order to pursue its spirit") (citing Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921(b)).

Thus, in regard to the timing of the "dual tracks," pursuant to the Borough's operative SALDO, any zoning approvals were to be resolved *prior* to the governing body's approval of the land development plan. This is consistent with case law of this Court. *See Jenkintown.* Additionally, pursuant to the operative SALDO, a plan "shall not" be approved if it is inconsistent with the Zoning Ordinance. *See* Former SALDO § 97-26.D, S.R.R. at 30b. Our case law: recognizes that the MPC is silent as to the timing of challenges to the zoning aspect of land development approval; states that the terms of the municipality's SALDO control regarding the timing; and notes that "issues involving zoning in land development should be resolved before a governing body may grant final approval." *Jenkintown*, 858 A.2d at 141 (citing *Graham v. Zoning Hearing Bd. of Upper Allen Twp.*, 555 A.2d 79 (Pa. 1989)).

Here, Neighbors argue that the Future Addition is inconsistent with the Zoning Ordinance and not permitted in the NC-1 zoning district. If this is the case, then those issues were to be resolved prior to the Borough's approval of the 1997 Plan. Nevertheless, the 1997 Plan was approved, and it appears no appeals were taken from the approval.

A review of the approved 1997 Plan reveals that it shows the existing building and the Future Addition. O.R., Plan, Sheet 3; R.R. at 753a. There are no conditions requiring the developer to obtain any zoning approvals. *See generally* O.R., Plan, Sheets 2 & 3; R.R. at 752a-53a. While Neighbors argue the proposed

11

use of the Future Addition was not disclosed on the 1997 Plan, we disagree. Sheet 3 of the approved Plan states, "Zoning Requirements: Article IV – NC-1 Neighborhood Conservation District" and immediately below that line, the 1997 Plan explicitly states, "Proposed Use: Professional Offices." O.R., 1997 Plan, Sheet 3; R.R. at 753a. Additionally, the approved 1997 Plan contains a note stating, "Required parking for Professional Offices is 1 space per 750 s.f. Potential gross floor area for parking calculations in the Barclay is 17,117 s.f. and 18,150 s.f. in the proposed addition for a total gross floor area of 35,267 s.f." O.R., 1997 Plan, Sheet 3, Note 4; R.R. at 753a. The gross floor area of the Future Addition is listed as 18,150 s.f. *Id.* The 1997 Plan also contains a note stating that building coverage equals 14,003 s.f. and includes the existing Barclay Building footprint (7,428 s.f.), a new storage shed footprint (475 s.f.), and "a future building reserve area (6,100 s.f.)." O.R., 1997 Plan, Sheet 3, Note 2; R.R. at 753a. An additional note on the 1997 Plan states that the impervious coverage includes 14,003 s.f. of building area and 24,946 s.f. of paving, which includes the future parking expansion area. O.R., 1997 Plan, Sheet 3, Note 3; R.R. at 753a. Thus, it is apparent from the approved 1997 Plan that the Future Addition was part of what was approved in 1997 and that the proposed use of the buildings depicted in the approved 1997 Plan was for professional offices.

If this stated use was inconsistent with the Zoning Ordinance, then the Borough should not have approved the 1997 Plan. *See* Former SALDO § 97-26.D., S.R.R. at 30b. But, it did.[13] Alternatively, the Borough could have imposed a

---

[13] Again, notably, Neighbors state they are not challenging the 1997 Plan. A challenge to the 1997 Plan must have been brought within 30 days of the Borough's approval of the 1997 Plan unless such person challenging the approval alleges and proves he had no notice, knowledge, or reason to believe that such approval had been given. *See* Section 914.1 of the MPC, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10914.1. Neighbors never alleged, nor do they

12

condition requiring zoning approval, but it did not.[14]  *See* Section 508 of the MPC, 53 P.S. § 10508 (regarding imposing conditions); *Jenkintown*, 858 A.2d at 141 & 143 (stating issues involving zoning in land development should be resolved before governing body grants approval, and vacating and remanding matter to governing body with direction to amend approval of land development plan to make approval conditional on developer's receipt of necessary zoning approval).

Under the terms of the Borough's SALDO, the approval implies that the 1997 Plan is consistent with the Zoning Ordinance.  *See* Former SALDO § 97-26.D, S.R.R. at 30b.  If such approval was in error, an appeal should have been taken from that approval.  *See Jenkintown* (holding in an appeal from an approval of a development plan, where SALDO required governing body to consider whether applicant complied with terms of zoning ordinance, and governing body erred in concluding that proposal complied, governing body erred in approving development proposal without imposing the condition of obtaining necessary zoning approval); *see also* Former SALDO § 97-59 (stating appeals with respect to any application for subdivision and land development approval shall be governed by the MPC).

---

argue before this Court, a lack of notice, knowledge or reason to believe that such approval had been given.

[14] We note the Borough imposed a condition regarding the construction of sidewalks.  *See* O.R., 1997 Plan, Sheet 2; R.R. at 752a; *see also* Jt. Ex. J-6 8/22/97 Letter; R.R. at 760a-61a (stating that Borough Council approved the Plan with certain waivers and the condition that certain language set forth therein be included on the plan and added as a deed restriction).  The parties stipulated that this letter constituted a decision of the Borough Council pursuant to Section 508 of the MPC, 53 P.S. § 10508.  Jt. Stip. ¶ 11, R.R. at 788a-89a.  We also note the 1997 Plan states, "General note regarding street trees along High Street:  Final tree locations shall be subject to the direction of the West Chester Borough Planning Commission."  O.R., 1997 Plan, Sheet 3; R.R. at 753a.  The approved 1997 Plan also indicates that a highway occupancy permit is required.  O.R., 1997 Plan, Sheets 2 & 3, R.R. at 752a-53a.

At this point, we are faced with the recorded approved 1997 Plan that: includes the Future Addition; notes that the total square footage of building coverage includes both the existing Barclay Building and the Future Addition; and states that the proposed use is "Professional Offices." O.R., 1997 Plan, Sheet 3, R.R. at 753a. Neighbors contend that, despite the approved 1997 Plan, the building permit lacks zoning approval. Neighbors argue that allowing a building permit to be issued based upon the approved 1997 Plan would have this Court hold that granting SALDO approval without necessary zoning approvals waives zoning requirements once the appeal period for the SALDO approval has expired. Neighbors' Brief at 50. Neighbors contend this effectively allows the governing body to waive zoning requirements if it grants SALDO approval before zoning approvals have been considered and obtained. Neighbors' Brief at 50. We disagree.

Initially, we note that government actors are presumed to act legally. *See Office of Governor v. Donahue*, 59 A.3d 1165, 1170 (Pa. Cmwlth. 2013) (stating, "[n]o rule of law requires this Court to presume that an agency will act in bad faith in complying with its statutory duties"), *aff'd*, 98 A.3d 1223 (Pa. 2014); *Hughes v. Chaplin*, 132 A.2d 200, 202 (Pa. 1957) (stating presumption of regularity of acts of public officers exists until the contrary appears). Therefore, we decline Neighbors' implied invitation to presume that governing bodies will act beyond their authority and improperly waive zoning requirements.

We acknowledge that, in arguing that the Board erred in determining that the building permit was not invalid despite the lack of zoning approval, Neighbors quote: Section 105.4 of the 2009 International Building Code which Neighbors state the Borough adopted (stating that permits presuming to give authority to violate the Zoning Ordinance shall not be valid); Section 104 of the

14

Zoning Ordinance (stating that "[n]o building permit shall be issued until the Zoning Officer has certified that the proposed building . . . complies with the provisions of this chapter and other applicable codes, regulations and ordinances"); and Section 108 of the Zoning Ordinance (stating that if zoning officer determines that application is not in compliance with provisions of this chapter, *i.e.*, the Zoning Ordinance, "it shall be his/her duty to refuse the permit"). Neighbors' Brief at 41-42.

Thus, based on the foregoing, before issuing the building permit, the zoning officer must ensure compliance with the Zoning Ordinance. However, here, the SALDO makes clear that approval of a subdivision and land development plan could not have been given if the plan was inconsistent with the applicable Zoning Ordinance. *See* Former SALDO § 97-26.D, S.R.R. at 30b. Therefore, with no conditions regarding outstanding zoning approvals noted on the approved 1997 Plan, the zoning officer could interpret the 1997 Plan approval as a representation of consistency with the Zoning Ordinance and, consequently, could issue the building permit under the circumstances here.[15] *Cf.* Former SALDO § 97-20.B (stating that

---

[15] In support of their position, Neighbors rely on *Highland Park Community Club of Pittsburgh v. Zoning Board of Adjustment of City of Pittsburgh*, 506 A.2d 887 (Pa. 1986). Neighbors point out that in that case, the zoning administrator had approved a certificate of occupancy on the assumption that the passage of time had converted an improper use into one that was lawful. Neighbors' Brief at 42 (citing *Highland Park*, 506 A.2d at 888). The Court held that the permit was issued in error and that the property owner did not have vested rights in the permit. That case is distinguishable. Here, we are not dealing with an assumed nonconforming use, nor has Applicant argued vested rights. Instead, we are addressing the effect of a recorded approved subdivision plan, which the zoning officer consulted prior to issuing the permit. *See* F.F. 20. As stated, the zoning officer could rely on the 1997 Plan to determine that the permit being issued was in accordance with the Zoning Ordinance, as well as the cited provision of the International Building Code, which states that a permit cannot violate the Zoning Ordinance, because the SALDO says that no plan shall be approved if it is inconsistent with the Zoning Ordinance— *See* SALDO § 97-26.

no building permit under the Zoning Ordinance shall be issued until a final subdivision or land development plan has been approved and recorded).

In the event one believes a governing body has incorrectly waived zoning requirements, one has a remedy in the appeal process. *See* Section 914.1 of the MPC, 53 P.S. § 10914.1; *Jenkintown* (finding that development plan was defective for lack of zoning permit and vacating and remanding matter to governing body with direction to amend approval of land development plan to make approval conditional on developer's receipt of necessary zoning approval). While Neighbors contend there was no zoning approval that they or other potentially aggrieved property owners could have appealed here, Neighbors' Brief at 50, significantly, an appeal could have been taken from the approval of the 1997 Plan.[16] Again, we note that it is the terms of the municipality's SALDO that prescribes the timing of the "dual tracks" for approval. *Dambman*. Where zoning approvals still need to be obtained during the subdivision and land development process, the proper course is

_____

[16] As stated, Neighbors do not challenge a lack of notice of the 1997 Plan approval here. *See supra* note 14. Neighbors raise general due process and public policy concerns, pointing out the difference between the zoning and subdivision process, and contending that there is no notice or public hearings in the subdivision process, "as these applications follow an administrative rather than a quasi-judicial path to approval." Neighbors' Brief at 50-51; Neighbors' Reply Brief at 30-31. However, Neighbors make these arguments for the first time in their argument portion of their brief to this Court. Accordingly, they are waived. *See Teazers, Inc. v. Zoning Bd. of Adjustment of City of Phila.*, 682 A.2d 856, 859 (Pa. Cmwlth. 1996) (ruling that where applicant never raised argument before zoning board and attempted to raise issue for first time on appeal to the trial court, issue was waived); *Dehus v. Unemployment Comp. Bd. of Review*, 545 A.2d 434, 436 (Pa. Cmwlth. 1988) (stating a party waives review of an issue by failing to raise it at the earliest possible opportunity). Additionally, these arguments are essentially policy arguments not tied to any specific harm to Neighbors here. Further, we note that with respect to Final Plan review by the Borough Planning Commission, the SALDO states, "Owners of all land directly adjacent to the subject tract, as well as any other landowner deemed by the Borough to be potentially affected by the proposed development, shall be notified by the applicant, by letter, of the date and purpose of the meeting at which the plan will be reviewed." Former SALDO, § 97-15.B.1.a, O.R. Ex. SA-12.

16

for the governing body to condition the approval on the developer obtaining such approvals. *See Jenkintown*. As such, a remedy exists if one believes the governing body has improperly waived zoning requirements. Thus, we reject Neighbors' argument.

Because, for these reasons, we determine that the building permit was not issued in error, we need not address Neighbors' remaining arguments.[17] Accordingly, we affirm the order of the trial court, albeit on other grounds.[18]

_____
CHRISTINE FIZZANO CANNON, Judge

---

[17] We note Neighbors complain that the building permit plans do not "match" the 1997 Plan because the proposed building is a different size, albeit smaller, than that depicted on the 1997 Plan. Neighbors' Brief at 12-13. Applicant argues this issue is waived for failure to raise it before the Board and because Neighbors fail to present argument or cite authorities on this issue. Applicant's Brief at 26; Applicant's Reply Brief at 13. We agree that this is waived, as Neighbors did not include this issue in their appeal to the Board. *See generally* Neighbors' appeal application, R.R. at 488a-91a.

[18] This court may affirm the decision of the trial court on any grounds. *Slusser v. Black Creek Twp. Zoning Hearing Bd.*, 124 A.3d 771, 772 (Pa. Cmwlth. 2015).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Appeal of Joanne W. Smith and : 
Robert L. Whetstone from the Decision :
of the Zoning Hearing Board of West :
Chester Borough :
:
Appeal of: Joanne W. Smith and : No. 1715 C.D. 2018
Robert L. Whetstone :
:
:
:
Joanne W. Smith and :
Robert L. Whetstone :
:
:
v. :
:
:
Zoning Hearing Board of :
West Chester Borough :
:
:
v. :
:
:
StanAb, LP :
: No. 1725 C.D. 2018
Appeal of: StanAb, LP :

ORDER

AND NOW, this 4th day of May, 2020, the November 27, 2018 order of the Court of Common Pleas of Chester County is AFFIRMED on other grounds consistent with this opinion.

_____
CHRISTINE FIZZANO CANNON, Judge