[J-1-2020] [MO: Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## EASTERN DISTRICT

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 4 EAP 2019 |
| | : | |
| Appellee | : | Appeal from the Order of Superior |
| | : | Court entered on July 5, 2018 at No. |
| | : | 251 EDA 2017 (reargument denied |
| v. | : | September 6, 2018) reversing the |
| | : | Order entered on December 6, 2016 |
| | : | in the Court of Common Pleas, |
| DARREN MONTGOMERY, | : | Philadelphia County, Criminal |
| | : | Division at No. MC-51-CR- |
| Appellant | : | 00014901-2016. |
| | : | |
| | : | ARGUED:  March 10, 2020 |

## DISSENTING OPINION

**JUSTICE WECHT**                                                                              **DECIDED:  July 21, 2020**

On May 21, 2016, Philadelphia Police Officer Robert McCuen watched Darren Montgomery walk along East Chelton Street.  Drawing upon his thirteen years of law enforcement experience, Officer McCuen was able to determine that Montgomery was "messing with the handle of his gun in his waistband."  *See* Maj. Op. at 2 (quoting Notes of Testimony ("N.T."), 8/15/2016, at 5).  Officer McCuen was not equivocal about what he observed.  It was the brown handle of a gun protruding from Montgomery's pants.  Thus, for purposes of this case, there exists one immutable fact:  at the time that the Commonwealth can prove that Montgomery carried a firearm on his person, that firearm was visible.

For purposes of 18 Pa.C.S. § 6106, the crime that we are called upon to interpret, carrying a visible firearm without a license is not illegal.  The General Assembly only has made it criminal for a person to carry a "concealed" weapon without a valid license.  18 Pa.C.S. § 6106(a).  When Montgomery had a firearm "on or about his person," *id.*, enough

of the gun could be seen so as to enable Officer McCuen to identify the object as such. This circumstance stands in stark contrast to the statutory requirement that the firearm be "concealed." Indeed, to any objective reader, visibility and concealment would appear to be opposites.

Utilizing any of our most basic canons of statutory interpretation, this case is straightforward. The Majority identifies some of those canons, but does not substantively discuss or apply all of them, and then somehow concludes that the totality of the circumstances in this case converts a visible firearm into a concealed one. *See* Maj. Op. at 16-17. This is troubling, to say the least, because the General Assembly was clear in its terms and in its objective.

Now, by judicial revision, a new crime is born. The Commonwealth no longer has to prove that the weapon actually was concealed. Under the new § 6106, the Commonwealth only has to prove that the person "partially concealed" the weapon. We are not permitted to add to, or subtract words from, a statute. But that proscription does not deter the Majority. Perhaps worse, the Majority sets no standards, let alone workable ones, as to how much of a firearm can be visible for it still to be "concealed." The Majority's interpretation raises such questions, but does nothing to answer them, leaving police officers unsure when to arrest for this crime, exposing lawful gun carriers to unwarranted arrest, and subjecting all Pennsylvanians to a crime without adequate notice as to what constitutes criminal behavior under this new (and vague) crime created by the Majority.

When interpreting a statute, an appellate court's primary objective is to "ascertain and effectuate the intention of the General Assembly." *Koken v. Reliance Ins. Co.*, 893 A.2d 70, 80-81 (Pa. 2006) (citing 1 Pa.C.S. § 1921(a)). However, an appellate court is not unrestrained in the means that it uses to achieve this end. Indeed, there is an order

that we must follow, beginning with a consideration of the actual language chosen by the General Assembly, as those words represent the best indicator of that body's intent. *Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005). It is only when the language, given its common and approved understanding, is ambiguous or does not resolve the problem that we resort to other means of interpretation.

If the language is clear and unambiguous, we are bound by that language, even when it produces "harsh or draconian result[s]." *Koken*, 893 A.2d at 82. Although we seek to effectuate the legislative intent, a statute's clear, unambiguous terms cannot "be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Only when a term or phrase is ambiguous does the rest of the interpretive toolbox become available to a court. It is here that the Majority first falters. After rejecting the Superior Court's patently incorrect interpretation that "any level of concealment, even partial," is sufficient to satisfy § 6106 as a matter of law, the Majority declares that we "must still construe the term 'concealed,' as used in Section 6106." Maj. Op. at 17, 19. But then the Majority leapfrogs over its obligation to contemplate the plain meaning of the term using the "rules of grammar and according to [its] common and approved usage[.]" 1 Pa.C.S. § 1903(a). The Majority does not bother even to contemplate whether the term "concealed" is ambiguous. Instead, the Majority appoints itself to decide what is "unreasonable" (Maj. Op. at 20), inverts the analysis, and then dives straight into the rule of lenity, announcing its belief that presently the deferential rule does not apply because doing so would "override common sense and evident statutory purpose." Maj. Op. at 20 (quoting *Commonwealth v. Butler*, 150 A.2d 172, 173 (Pa. Super. 1959)). Thus, without ever saying so, the Majority appears simply to assume "concealed" is ambiguous, and then proceeds without more to rummage around in our interpretive toolbox in a quest for some

construction the Majority deems sensible enough.  The problem is that the word "concealed" is not ambiguous at all.

A statutory provision is ambiguous if there are at least two reasonable interpretations of the word.  *See A.S. v. Pa. State Police*, 143 A.3d 896, 905-06 (Pa. 2016).  We must ascribe to the challenged term its approved and common usage.  To this end, dictionary definitions are helpful, but are not always definitive.  As the Supreme Court of the United States explained in *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997), "[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but also by] the specific context in which that language is used, and the broader context of the statute as a whole."  Typically, "a word's usage accords with its dictionary definition.  In law as in life, however, the same words, placed in different contexts, sometimes mean different things."  *Yates v. United States*, 574 U.S. 528, 537 (2015).  Here, the dictionary definition aligns with the context in which it was used.

Merriam Webster's online dictionary defines "concealed" as "kept out of sight or hidden from view."  *Concealed*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/concealed (last visited May 19, 2020).  Unsurprisingly, and consistent with its widely understood meaning, Merriam Webster uses the following example:  "carrying a *concealed* weapon."  *Id.* (emphasis in original).  A weapon that is exposed to view, and easily identified by a police officer, is not "kept out of sight," nor is it "hidden from view."  Instead, such a weapon is "visible," which is one of the antonyms that Merriam Webster lists.  *Concealed*, MERRIAM-WEBSTER.COM THESAURUS, https://www.merriam-webster.com/thesaurus/concealed (last visited May 19, 2020).

Similarly, Black's Law Dictionary defines "concealment" as "[t]he act of removing from sight or notice; hiding."  *Concealment*, BLACK'S LAW DICTIONARY (11th ed. 2019).

Obviously, a weapon that can readily be viewed is not "remov[ed] from sight or notice." It is the opposite of that.

While these dictionary definitions are useful in this exercise of interpretation, perhaps a picture is the best device to demonstrate what is understood (or what is not understood) when the term "concealed" is used, and to demonstrate the absurdity of the Majority's definition. Observe the handkerchief protruding from this gentleman's breast pocket:



As is evident from the photograph,[1] half of the handkerchief, folded ornately, protrudes out of the pocket and is visible to even the most casual observer. The other half, however, is secreted inside the pocket, and outside of view. The handkerchief is situated in the same manner that Montgomery's handgun was: part visible and part hidden. The question is whether this person has "concealed" his handkerchief? Bound to its own logic, the Majority would have no choice but to say "yes."

---

[1] This image was selected from a bank of free internet images. Tyler Harris (@tylerjackharris), UNSPLASH, https://unsplash.com/photos/P_oQWfYqY1M (last visited July 2, 2020). The image is licensed for free commercial and noncommercial use. *See* https://unsplash.com/license (last visited July 2, 2020).

However, no common understanding or definition of the term would support characterizing this handkerchief as "concealed." One would be hard-pressed to find any rational observer that would describe it as such. Yet, partial visibility is included within the Majority's new definition of concealment. There is no material difference between the handkerchief shown and the gun that Officer McCuen saw in Montgomery's waistband, each being both exposed and hidden to some degree. One could argue that the handkerchief is "partially concealed," and one also could argue that it is "partially exposed." But our task is not to pronounce a reformation of the statute according to what we deem "reasonable." *See, e.g.,* Maj. Op. at 23. Our task is confined to defining the actual words used by the General Assembly. This enterprise does not allow for the inclusion and interpretation of alternative, judicially-manufactured versions or forms of those words. We must confine our evaluation to the word "concealed." This handkerchief is not concealed. Neither was Montgomery's gun. Nonetheless, by the letter of today's ruling, the handkerchief in this photo would be considered "concealed" in this man's pocket in the same way that Montgomery's gun was "concealed" in his waistband.

The Majority leaves law enforcement and gun owners in perilous limbo, failing entirely to provide guidance as to how much of the firearm can still be viewed yet also still be concealed. What if a police officer can see only the hammer on the back of the gun? What if she can see all the way up to the trigger, but no part of the barrel? This newly minted version of concealment not only is inconsistent with the everyday understanding of the term; it raises an entirely new set of problems that the Majority makes no effort to address. I would think it axiomatic that, when a police officer can see the handle of a firearm using nothing more than his or her eyesight, that weapon could not be considered "hidden from ordinary observation." But, if absolute invisibility is not required, then any amount of exposure can subject individuals to unwarranted arrest and prosecution. The

Majority now leaves police officers to guess as to whether something is concealed. To evade unwarranted arrest, firearm owners similarly must guess as to whether enough of the weapon is showing when being carried.

The only way to interpret concealment so broadly would be to engraft upon the statute an intent element that does not appear within the terms of § 6106. Section 6106 does not contain language such as "intent to conceal" or "attempt to conceal." Had the legislature chosen to do so, it might have permitted police officers to arrest persons who wanted (or tried) to conceal a weapon but failed to do so for one reason or another. When the General Assembly desires such tried-but-failed elements to be a part of the substance of a crime, it knows very well how to include such provisions within the definition of that crime. *See, e.g.*, 18 Pa.C.S. § 2702 (defining aggravated assault to include both causing various degrees of bodily injury and attempts to cause such injury); 18 Pa.C.S. § 3701(a)(2) (defining "in the course of committing a theft" for purposes of robbery to include attempts to commit a theft). The General Assembly chose not to include such language in § 6106. The judiciary is not at liberty to add to, or improve upon, statutes to fit the circumstances of a given case or to facilitate a "reasonable" result.

Perhaps Montgomery wanted to conceal the weapon, and perhaps he even believed that he had done so. Neither of these speculations matters. The element of concealment requires completion of the act. In a word, it requires . . . well, it requires concealment. Consider a motorist driving along the highway fully intending to exceed the posted speed limit of fifty-five miles per hour. If the motorist never exceeds that posted limit, it does not matter how much he or she wants to do so: there is no violation of the Motor Vehicle Code. Section 6106 of the Crimes Code is no different. If a weapon is not actually concealed, the statute is not violated, regardless of whether the individual fully

intended to conceal that weapon. Every crime requires both an *actus reus* and a *mens rea*. One without the other is no prosecutable crime.

Because concealment, as used by the General Assembly in this statute, is not ambiguous, our inquiry must simply end there. But the Majority does not abide that. Instead, the Majority evades the threshold ambiguity question, choosing instead to venture into other canons of interpretation. So, for purposes of this discussion, let us assume for the moment that the term is ambiguous. It is equally clear under such an exercise that our canons of construction do not support the Majority's interpretation of the word "concealed."

In this exercise, I imagine (like the Majority) that the statutory terminology ("concealed") is somehow ambiguous, thus allowing me to break through the actual language used by the General Assembly and seek instead to ascertain the legislative body's intent. In doing so, our courts consider, *inter alia*, the following non-exhaustive list:

> the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute.

*Commonwealth v. Ricker*, 170 A.3d 494, 512 (Pa. 2017) (Wecht, J., dissenting) (quoting *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 984 (Pa. 2016) (citing 1 Pa.C.S. § 1921(c))).

With the enactment of § 6106, the General Assembly sought to protect the citizenry from persons (those who have not submitted to the process of licensure) moving in public while carrying a hidden weapon. As the Majority puts it, the crime is meant to "apprise citizens of the fact that an individual is carrying deadly force, thereby lessening the chance that such individual could take his adversary, or anyone else, at a fatal disadvantage."

Maj. Op. at 20. That concern obviously is not present, or at least not as prevalent, when the public can see the weapon. Assuming a person is not violating 18 Pa.C.S. § 6105 (persons not to possess a firearm) or some other provision of the Uniform Firearms Act, that is precisely why that individual may carry a weapon openly without committing a criminal offense: the public can see the weapon and is not subject to ambush or being placed at a "fatal disadvantage." For those who desire to carry a weapon and to obtain that hidden advantage, a demonstration of eligibility through the licensing process is required. Only through such licensing compliance can the person move about in public without members of the public knowing that the person is armed.

The General Assembly drew a very clear line. Either the gun is visible, putting the public on notice that a person is armed, or the gun is concealed, which renders the public unaware of the presence of the weapon (a circumstance that requires a specific license). The foggy middle ground created by the Majority is not only unsupported by the statutory text, it also is inconsistent with the General Assembly's intent. The purpose of Section 6106 was to criminalize unlicensed, hidden weapons. It was not to punish visible weapons, which the public can see and know about. In this case, Officer McCuen clearly could see and identify the weapon on Montgomery's hip, as could any member of the public at that particular moment.[2]

---

[2] Presumably, the Majority is concerned that the intent of the General Assembly to make the public aware of certain dangers would be thwarted if, for example, a person carried a weapon in a manner in which only a small portion of it is exposed. While that is an understandable concern, it does not alter the words that the General Assembly selected, and to which we must assign plain meaning. As I explain, "concealed" generally is understood to mean hidden entirely. The Majority makes no effort to define the term or to contemplate whether it is ambiguous. We are not permitted to ignore the plain meaning of terms in an effort to overcome societal problems that could ensue. We elect legislators to address such problems. That one might avoid prosecution merely because only a sliver of the weapon is visible is a consequence of the unambiguous words enacted by the legislature. It is not our job to remedy whatever harms result. The General

As the Majority acknowledges, when we interpret a statute, we presume that the General Assembly intended that the entire statute be effective and certain. *See* Maj. Op. at 17 (citing 1 Pa.C.S. § 1922(2)). Furthermore, "[w]e are not permitted to ignore the language of a statute, nor may we deem any language to be superfluous." *Commonwealth v. McCoy*, 962 A.2d 1160, 1168 (Pa. 2009) (citing 1 Pa.C.S. § 1921(a)). Interpreting the term "concealed" to include things that are visible, as the Majority does, erases the element from the statute. As demonstrated above, the General Assembly intended to protect the public from weapons that are hidden from observation, not from visible firearms. If "concealed" were to mean anything other than "invisibility," then the term becomes superfluous, and the crime necessarily mutates from "carrying a **concealed** weapon without a license" into simply "carrying a weapon without a license." The General Assembly is free to create that transformation. We are not.

Another canon of statutory interpretation, the rule of lenity—which requires that penal statutes be strictly construed—compels the same interpretation. The Majority, however, quoting the Superior Court's 1959 decision in *Butler*, concludes just the opposite, claiming that the rule "is not an inexorable command to override common sense and evident statutory purpose." Maj. Op. at 20 (quoting *Butler*, 150 A.2d at 173). The Majority finds it "unreasonable" to apply the rule of lenity, because doing so would allow a person to evade prosecution if even a small portion of the gun is visible to the public. This, the Majority asserts, would thwart the very transparency that the statute promotes.

But the rule of lenity is not so easily swept aside. As we recently noted in *Commonwealth v. Smith*, 221 A.3d 631 (Pa. 2019), the Supreme Court of the United States has emphasized that the rule is "'not merely a convenient maxim of statutory

---

Assembly writes the laws as it chooses. We neither approve nor disapprove those laws; we merely interpret them.

construction,' but, rather, 'is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited.'" *Id.* at 639 (quoting *Dunn v. United States*, 442 U.S. 100, 112 (1979)). I would not disregard this command, and I would apply the rule, strictly interpreting the provision in Montgomery's favor. To do otherwise violates not only Montgomery's due process rights but also the due process rights of all Pennsylvanians, as we all are now unsure about when a firearm is concealed and when it is visible enough to allow carry without arrest and prosecution.

The Majority offers unconvincingly little to support its refusal to apply this fundamental rule. By citing the side-door provision from *Butler*, the Majority signals an apparent belief that interpreting "concealed" to mean fully hidden from view defies common sense and the statutory purpose. However, the purpose of the statute is to provide notice to the public when a person, one who is not permitted to carry a weapon out of public view because he or she did not first obtain a license, is carrying a weapon. When that weapon is visible, partially or otherwise, the public is on notice, and the legislative concern is alleviated. Common sense dictates that the crime only arises when the public *cannot* know that the person is carrying the firearm. When the gun is visible, no crime is committed.

The Majority then declares that the rule of lenity does not apply because it would be "unreasonable" to do so, because it would allow persons to avoid prosecution by the mere fact that part of the gun is visible, even just a small part. First, there is nothing unreasonable about not prosecuting people who have not violated the plain terms of a criminal statute. As shown, both the plain language and the legislative intent of Section 6106 paint a clear picture of what the General Assembly sought to criminalize: carrying secreted weapons without first obtaining a valid license. A person who has not

actually "concealed" the weapon from public view cannot be prosecuted simply because we think it is "reasonable" to assume he meant or wanted or tried to do so. The goal of statutory interpretation is not to construe provisions so as to ensnare as many people as possible, nor is a statute "unreasonable" merely because it only would criminalize the conduct of a portion of those who our "common sense" tells us really "want" to break the law.

Second, to the extent that the Majority believes it to be "unreasonable" for a person to escape prosecution when only a small fraction of the firearm can be seen, that is a choice the legislature opted for when it selected the word "concealed." This is a policy judgment with which we as the judiciary cannot tinker. Indeed, there is nothing "unreasonable" in a decision by the General Assembly to limit the reach of its criminal statutes. A "reasonable" criminal law is not necessarily or always the one that criminalizes the *most* behavior. Nor is it our job to concern ourselves with the reach of the law. We must apply our canons of statutory construction and proclaim a result, regardless of whether that interpretation is "harsh or draconian." *Koken*, 893 A.2d at 82.

The Majority exacerbates the due process problems that inform its use of the rule of lenity by interpreting the statute in a manner that increases the uncertainty for gun carriers. Interpreting the statute strictly, as we must, the line is clear for both law enforcement and for those carrying weapons. By allowing *some* visibility to still be considered "concealed," but not explaining at all how much visibility is permitted and how a court or police officer or gun owner is supposed to know, the Majority infuses uncertainty where it does not need to be, depriving our citizenry of full and fair notice of what is and what is not criminal conduct in Pennsylvania. The Majority's answer to citizens, police officers and trial judges is: "Take your best guess as to what is 'concealed enough' to be 'concealed.' Maybe we'll decide later if your guess was wrong, or maybe not."

The fact that this case arises in the context of a preliminary hearing, a proceeding that requires only the demonstration of a *prima facie* case, is of no moment, notwithstanding the Majority's belief to the contrary. The purpose of the preliminary hearing is for the Commonwealth to prove to a neutral and detached judicial officer that it possesses sufficient evidence to prove that crimes were committed and that those crimes likely were committed by the defendant. *See Commonwealth v. McBride*, 595 A.2d 589, 591 (Pa. 1991). The evidentiary threshold is low, but that does not relieve the Commonwealth from its burden of submitting some evidence as to every element of each crime charged.[3] If the Commonwealth does not have evidence as to an element of a

---

[3] The Majority replies that "concealment" does not mean "partial concealment" and does not mean "total concealment." *See* Maj. Op. at 20-21 n.14. This, the Majority insists, is a construction that interprets the term in a manner consistent with "plain meaning and common usage." *Id.* The Majority never tells us what it understands that "common usage" or "plain meaning" is. It is just what a majority of this Court will determine on any given day, in any given case. We are left with a wholly unworkable definition, and one that is inconsistent with the General Assembly's words to boot.

If concealment does not mean "absolute invisibility," *id.* at 20, and does not mean "partial concealment" or "total concealment," what exactly does it mean? The statutory crime was drafted in a binary fashion. A gun is either concealed, or it is not. There is no other meaning of the term consistent with the language used, with how that language is understood in everyday parlance, with the context in which it was used, and with the intent of the General Assembly. Instead, the Majority offers a muddled hybrid in which concealment means something between partial and total concealment, but only in a "manner" that hides "it" (one cannot be sure how much of "it") from ordinary observation. The only way in which this works is if one ignores the actual plain meaning of the term, and instead views the crime as one that is dependent upon whether the totality of the circumstances enables a fact-finder to reach the conclusion that *enough* of the gun was showing, or was hidden, to believe that the actor *wanted* it to be concealed. Of course, "intending to conceal" or "wanting to conceal" are not elements of this crime. But that does not deter today's Majority.

To the extent that there is any confusion about this (and confusion there will be), the Majority simply says that a jury can figure it out later. But this is not the law. This is the antithesis of how the criminal law works, and embeds a due process violation into our jurisprudence. Every person has a right to know what the law is, and to know when he is committing a crime. This "the jury will sort it out later" crime ignores the fact that the legislature did not enact an "intent to conceal" crime, and did not enact an "attempt to

crime, the Commonwealth cannot prove the crime, and the charge must be dismissed, regardless of whether the proceeding is a preliminary hearing, a full criminal trial, or any other evidentiary proceeding.

Thus, the Majority's reliance upon the nature and evidentiary burden of a preliminary hearing is unavailing. *See* Maj. Op. at 20-21. Officer McCuen testified at that hearing that the firearm was not fully visible, but that enough of it could be seen to enable him to identify what he saw as the brown handle of a firearm. Stated otherwise, Officer McCuen told the presiding judicial officer that he saw a firearm. No invocation of any totality of the circumstances test, nor any emphasis upon the low burden at preliminary hearings, can change the fact that Officer McCuen testified that the gun was visible, not concealed.

Furthermore, the Majority's reliance upon the fact that Montgomery subsequently hid the gun in the potatoes is misplaced. The Majority highlights this act as evidence that Montgomery intended to conceal the weapon. *See id.* at 21. This fact is entirely immaterial to the actual inquiry. The crime requires first that the firearm is "concealed."

---

conceal" crime. It did enact a "conceal" crime. Either the gun is concealed or it's not. Letting a jury decide what a crime means after the fact means that the legislature no longer makes the law. Instead, police officers and juries do.

The resulting problems are obvious. A police officer easily can determine whether a gun is "concealed." It is not so easy—in fact it is nearly impossible—to fairly and consistently determine in a nonarbitrary fashion whether the totality of the circumstances supports arresting a person for concealing a weapon "in a manner so as to hide it from ordinary observation." Maj. Op. at 20-21 n.14. The officer has to perform this adjudication on the street level, and can only find out later whether seizing, searching, and (likely) incarcerating a person was a violation of one of our statutes. This later point in time, per the Majority's instruction, will not occur until the jury eventually decides what the law means. The consequences that befall the arrestee, particularly one who finds out later that a jury thinks he was not concealing the weapon clearly visible on his hip, are even more troubling.

All of these gymnastics could be avoided by simply adhering to the common, approved, understood meaning of the word that the General Assembly actually used.

It does not require merely an intent to conceal, or that the actor makes an attempt to conceal. The gun must be actually concealed. And, it must be actually concealed on the actor's person, not in a pile of potatoes. When the police observed the firearm on Montgomery's person, it was not concealed. It was visible for all to see. His after-the-fact attempt to hide the gun under root vegetables has no bearing upon the visibility of the firearm at the time in question: the moment of actual possession.

Section 6106 is a clear and unambiguous statute. By holding that "concealed" can mean "visible," the Majority strikes out a required element of the crime, in violation of nearly every applicable canon of statutory interpretation. The Majority judicially manufactures an entirely new crime. No longer is the crime "carrying a concealed weapon without a license." As of today, it merely is "carrying a weapon without a license."

This is not what the statute says, nor is it what the General Assembly intended. Because the canons of statutory interpretation compel the opposite conclusion, and because it is not this Court's job to rewrite, add, or modify statutory terms, I dissent.